THE PEOPLE *ex rel.* Joseph·N. Besse

*v.*

THE VILLAGE OF CROTTY.

1. MANDAMUS—*lies, though there is another remedy afforded.* Since the act of 1874, entitled "An act to revise the law in relation to mandamus," *mandamus* will lie in all cases where it affords an appropriate remedy for the enforcement of a legal right, without regard to whether there may be some other adequate remedy or not.

2. SAME—*former decision.* It was inadvertently said in *Ryan, Admr.* v. *Duncan et al.* 88 Ill. 144, that the petitioner must show that he has no other adequate remedy. The remark was made without reference to the present statute, which has changed the rule in that respect, as stated above.

3. SAME—*when it does not lie.* The rule is inflexible that *mandamus* will not lie when the right sought to be enforced is doubtful. The relator must show a clear and indubitable right to the writ or it will not be granted, and the act sought to be enforced must not only be lawful and proper in itself, but it must also be one that the defendant may lawfully do.

4. A petition for a *mandamus* to compel an incorporated village to issue licenses to the relator to keep a dram-shop and a pool table, must not only show that the village has conferred upon it power to issue the same, but also that there was, prior to the application for the licenses, such an exercise of the power by the adoption of an appropriate ordinance as would enable it lawfully and properly to issue them.

5. SAME—*to compel issue of license.* The fact that the municipal authorities of a village may have improperly issued license to others by reason of a want of authority, affords no possible reason why they should issue one to another applicant, and when they have no authority to issue them it is not material that they placed their refusal on improper grounds.

6. MUNICIPAL CORPORATION—*powers limited to those granted.* An incorporated village being a municipal corporation, can properly do only such acts as the law enables it to perform, and, it being a creature of the law, can exercise the powers conferred upon it only in the manner provided by law.

7. SAME—*its power to grant licenses.* The mere grant of power by the legislature to a municipal corporation to license, regulate and prohibit the sale of intoxicating liquors, will not, of itself, authorize its authorities to issue a license. This power is a dormant one and affords no authority to issue licenses until called into life and put into operation by appropriate legislation by the municipal authorities.

8. Without the adoption of a general ordinance on the subject authorizing the issue of licenses, and specifying who shall issue them, the length of time they shall run, the amount to be paid by the applicant, the time and manner of payment, etc., the corporate authorities are powerless to issue license to any one. This applies as well to the licensing of billiard or pool tables as of dram shops. This power can not be exercised by resolution only which simply fixes the amount to be paid and the time of payment.

9. PLEADING—*must state facts and not conclusions of law.* A petition for a *mandamus* to compel the issue of a license to the relator to keep a dram-shop should not only show the tender of a bond in the proper penalty, but the pleader should either set out the bond *in hæc verba*, or show by distinct and specific averment that it was in compliance with the statute. It is not sufficient to aver generally the tender of a good bond as required by law. Such an averment presents no issue of fact that can be tried, and is one of a mere conclusion of law.

APPEAL from the Appellate Court of the Second District; the Hon. NATHANIEL J. PILLSBURY, presiding Justice, and Hon. JOSEPH SIBLEY and Hon. E. S. LELAND, Justices.

On the 23d of May, 1878, appellant filed in the LaSalle county circuit court a petition for a *mandamus* against appellee for the purpose of compelling the latter to issue to him licenses authorizing him to keep a dram-shop and pool table within the corporate limits of the village of Crotty.

The petition is in substance and to the effect following: That petitioner is a citizen of LaSalle county, Illinois, resid-

182

THE PEOPLE v. VILLAGE OF CROTTY. [Sept. T.

ing in the village of Crotty, in said county. That said village is a municipal corporation, incorporated under an act of the General Assembly of said State, entitled "An act to provide for the incorporation of cities and villages," approved April 10, 1872, and in force July 1, 1872. That by virtue of the power vested in said village, by said act of the General Assembly, in relation to licensing the sale or giving away of any intoxicating liquors, it, the said village of Crotty, by and through its president and trustees, passed a resolution or order on May 4, 1878, in the words and figures following to-wit: "At a special meeting of the board, May 4, on motion of Graves, that license to keep dram shops for the present municipal year be fixed at $130. Approved. On motion of Prickett, that said license to keep dram shops be for every dram shop $80 in advance and $50 on or before November 1, 1878. Approved,"—all of which will more fully appear at the hearing hereof, reference being had to the records and files in the office of the clerk of said village. That at the special meeting aforesaid of said president and trustees, it was, among other things, ordered that a license for billiard and pool tables be passed, in the words and figures following, to-wit: "On motion of Prickett, that the license to keep billiard tables, bagatelle, pool tables, shooting galleries or other games of chance, be for every such privilege $5. Approved,"—all of which will more fully appear, reference being had to the records and files in the office of said clerk. That said president and board of trustees appointed one Thomas Morrissy clerk of said village, and one Alexander Vaughey treasurer of said village. That the petitioner knows of no other ordinance, by-law, resolution or order now in force or ever passed by said village and becoming a law or order of said village, and now in force, in relation to the keeping of dram shops, or the keeping of billiard, pool and bagatelle tables therein, save and except the orders or resolutions of said president and trustees hereinbefore set forth, and the petitioner is informed, believes and so states the fact to be, that there are none other

than the orders or resolutions aforesaid.   That on or about
May 9, 1878, a large number of persons, residents of said
village, made application to said president and trustees for a
license to retail spirituous, vinous and malt liquors, and for
a further license to keep billiard, bagatelle and pool tables,
and in accordance with the rules and regulations so passed
as hereinbefore set forth ; and that said president and trustees
licensed and authorized said persons to keep said tables as
aforesaid, and to sell by retail such liquors as aforesaid within
said village, the names of the parties so licensed being as fol-
lows: Lawrence Apple, John Domm, Gaspert Singe, John
Maher, Cornelius O'Laughlin, Valentine Mower, Edward
Battles, John Hayden and Margaret McGettrick.   That on
or before said 9th day of May, 1878, and at the same time
the aforesaid parties applied for license, the petitioner, con-
forming himself to said rules and regulations, and in con-
formity to the laws of said State now and then in force in
relation to the granting of licenses for selling or giving away
intoxicating drinks, and in the same manner as the aforesaid
parties had done in applying to said president and trustees
for license as aforesaid, presented to said clerk a bond in the
penal sum of $3000, payable to the People of the State of
Illinois, with two good and sufficient sureties, freeholders of
said county, each of whom, namely Richard Wolfe and Samuel
Goodrich, was ready and willing to swear that he was worth
over and above the sum of $10,000, free from all liens or in-
cumbrances, and that, further complying with said rules and
regulations, he presented and tendered to said treasurer the
sum of $80 for said license to keep a dram-shop as was pro-
vided by the resolution aforesaid, and the further sum of $5
for keeping a pool table as provided by the order aforesaid ;
but said treasurer refused, and still refuses to receive the
same, though petitioner avers said treasurer is the only person
authorized by law to receive money belonging to said corpora-
tion.   That said clerk received said bond, but did not approve
the same, nor grant to your petitioner a license for either of

the purposes aforesaid, though requested so to do. That said clerk has now the possession of said bond, and has not approved the same, and is the only officer authorized by order of said village to issue licenses for the purposes aforesaid. That said clerk, on said 9th day of May, at a special meeting of said president and trustees, presented to said president and trustees said bond of the petitioner for approval in the same manner as said clerk had presented the bonds of the persons aforesaid who applied for license for the purpose of keeping a dram-shop, and said clerk presented a petition to said municipal authorities of your petitioner for license to keep a pool table, as was in accordance with the practice and regulations of said president and trustees, and under the direction of said president and trustees; but the petitioner avers, and so states the fact to be, that said president and trustees have not approved said bond, and have neither granted nor refused either of said licenses so requested and desired by the petitioner, but refused and still refuse to either issue or deny the same, though they, the said municipal authorities, have had ample time and opportunity so to do, and have issued to the persons aforesaid, at and since the date aforesaid, licenses for like purposes as those claimed as of right by the petitioner, to numerous other applicants for like licenses. That the petitioner, in making his application as above set forth, namely: by presenting a good and sufficient bond to the clerk, to be approved, and by presenting and tendering the $80 aforesaid, in all things complied with the law, practice and rules of said village governing applicants for license to keep a dram-shop, and in presenting the petition aforesaid for license to keep a pool table, and in tendering the sum of $5 therefor, as aforesaid, he in all things complied with the rules and regulations of said village governing the issuing of said licenses, and he avers that having done all that was necessary and proper in law to entitle him to said licenses, the said village has neglected and refused to perform their duty in the premises to have said license issued to the petitioner, as in law they

are bound to do, though often requested so to do by the petitioner, by means whereof the petitioner is prevented from carrying on and exercising the business of retailing the liquors aforesaid, and from carrying on and exercising the business of keeping a pool table for the accommodation of the public and the gain of your petitioner, whereby your petitioner may earn an honest livelihood at the business aforesaid, as a large number of other residents of said village are doing under the licenses issued as aforesaid. Wherefore the petitioner prays a writ of *mandamus* directed to the said village of Crotty, commanding it to perform its duty in the premises, and to issue a license to the petitioner to keep a dram-shop, and a further license to keep a pool table within said corporation, and to proceed to approve the bond aforesaid, and to receive the $80 aforesaid for the dram-shop license aforesaid, and to receive the $5 aforesaid for the pool table license aforesaid, at or previous to the time the licenses aforesaid are issued to the petitioner, and that such further order may be made in the premises as justice may require.

To this petition a demurrer was overruled by the circuit court, and thereupon appellee filed an answer admitting substantially all the facts charged and relied on in the petition; and also, by way of defence, charged that petitioner was not a suitable person to grant licenses to, and for that reason appellee had declined to issue them to him. That during the year previous he had been licensed by appellee to keep a dram-shop, and that he had kept an ill-governed and disorderly house, to the scandal and disgrace of the inhabitants of the village. That licenses were refused wholly on account of his unfitness.

To this answer the circuit court sustained a demurrer, and upon appellee's declining to answer further, a peremptory writ of *mandamus* was ordered directing appellee to issue the licenses as prayed for in the petition.

Upon appeal to the Appellate Court of the Second District the judgment of the circuit court was reversed, and appellant

now brings the record to this court and assigns for error the reversal of the judgment of the circuit court.

Mr. M. T. MALONY, for the appellant.

Mr. JOHN H. WIDMER, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Prior to the act of 1874, entitled "An act to revise the law in relation mandamus," it was settled by a uniform current of decisions of this State and other States where the common law system obtains, that *mandamus* would not lie whenever the right was either doubtful, or where there was some other adequate remedy at law. So far as the latter branch of the rule is concerned, the act in question had the effect of placing *mandamus* in this State upon the same footing with other remedies at law. It was inadvertently said in *Ryan, Admr. etc.* v. *Duncan et al.* 88 Ill. 144, that the petitioner must show that he has no other adequate remedy. The remark was made without reference to the present statute, which has changed the rule in that respect, as we have just stated. It is now held that *mandamus* will lie in all cases where it affords an appropriate remedy for the enforcement of a legal right, without regard to whether there may be some other adequate remedy or not. But the rule is still inflexible that the action will not lie where the right is doubtful. In *The People ex rel. Richberg* v. *The Trustees of Schools,* 86 Ill. 613, it was said: "The principle is, the party praying the writ must show a clear right to it."

In *The County of St. Clair* v. *The People ex rel. Keller,* 85 Ill. 396, it was said: "The rule is well and uniformly established, that a relator must show a clear right before relief will be granted by the court in a proceeding of this character. Again, in *The People ex rel.* v. *Lieb,* 85 Ill. 484, it is laid down that the writ is not grantable as of absolute right in all cases; and that it is never granted unless the right of

the relator is clear and undeniable." To the same effect is the case of *The People ex rel. Foos* v. *Highway Commissioners*, 88 Ill. 142. Indeed there is nothing better settled in the whole domain of the law than that the relator, in a *mandamus* proceeding, must show a clear and indubitable right to the writ, otherwise it will not be granted. Has the appellant brought himself within the rule here laid down?

It is a fundamental principle in the law of *mandamus*, that the act sought to be enforced must not only be lawful and proper in itself, but it must also be one that the defendant may properly do. The defendant here is a municipal corporation, and can therefore properly do only such acts as the law enables it to. Not only so, being a mere creature of the law, it can exercise the powers conferred upon it only in the manner prescribed by law. It must, therefore, not only appear that the legislature has conferred upon appellee power to grant the licenses in question, but appellant must also show that there was, prior to the application for them, such an exercise of the power by appellee as enabled it lawfully and properly to issue them. It appears from the petition, and it is conceded, that appellee is a village incorporated under the general incorporation law. Subdivision 46 of section 62 of that act contains a grant of power to the city council in cities, and the president and board of trustees in villages, "to license, regulate, and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, the license not to extend beyond the municipal year in which it shall be granted, and to determine the amount to be paid for such license,  *  *  *  provided that in granting licenses such corporate authorities shall comply with whatever general law of the State may be in force relative to the granting of licenses."

By section 5 of chap. 43, entitled "Dram Shops," it is, among other things, provided, "No person shall be licensed to keep a dram-shop, or to sell any intoxicating liquors, by any county board or the authorities of any city, town or village, unless

he shall first give bond in the penal sum of $3000, payable to the People of the State of Illinois, with at least two good and sufficient sureties, freeholders of the county in which the license is to be granted, to be approved by the officer who may be authorized to issue the license, conditioned that he will pay to all persons all damages that they may sustain, either in person or property, or means of support, by reason of the person so obtaining a license selling or giving away intoxicating liquors," etc.

It is clear, from the first of the above cited provisions of the statute, that the legislature has given appellee the power to license, regulate and prohibit the sale of intoxicating liquors. But the mere grant of this power by the legislature would not of itself authorize the village authorities to issue a license. This power to license, regulate and prohibit is a dormant one, and affords no authority to issue licenses until called into life and put in operation by appropriate legislation by the municipal authorities. Without the adoption of a general ordinance on the subject, authorizing the issuing of licenses, and specifying who shall issue them, the length of time they shall run, the amount to be paid by the applicant, the time and manner of payment, etc., the village authorities are powerless to issue license to any one. What we have said with reference to licensing and regulating the sale of intoxicating liquors, is equally applicable to the licensing of pool tables. No ordinance had been passed by the village authorities declaring the manner in which the power to license such tables should be exercised, and until that was done the grant of power by the State was dormant and inoperative. It will hardly be seriously claimed that the two resolutions passed by the village authorities, and above cited, can be regarded as ordinances authorizing the issuing of licenses. They simply fix the amount to be paid and the time of payment.

It may be, if these resolutions had been followed by an ordinance authorizing the clerk, president or other officer of the village to issue licenses to applicants upon furnish-

ing the required bond as provided for by the statute, to be approved by the party authorized to issue the license, it would have been sufficient legislation to have given effect to the power granted and would have authorized appellee to issue the required licenses. But the petition fails to show the existence of any such ordinance, and failing in this it does not appear that the duty of issuing them was cast upon any one, or that appellee could rightfully or properly have issued them when the application was made.

The 5th section of the Dram-shop act, above cited, requires that the bond to be given by the applicant shall be approved by the municipal officer who is *authorized to issue the licenses.* Now, until the village authorities had, by ordinance, authorized the president of the board, clerk or other municipal officer to issue licenses, it is manifest that there could be no person in existence answering the description of the one required by the statute to approve the bond, and the village authorities would certainly have no right to issue a license without taking the requisite bond.

But even if there had been a proper officer to accept and approve the bond, the petition wholly fails to show that appellant presented or tendered such a bond as is required by the 5th section of the act above cited.

The charge in the petition is, that appellant " in conformity with the laws of said State now and then in force, etc., presented to said clerk a bond in the penal sum of $3000, payable to the People of the State of Illinois, with two good and sufficient sureties, freeholders of said county," etc. Now all this may be true and still the bond tendered may have been wholly insufficient.

The pleader should have either set out the bond *in hæc verba,* or should have shown by distinct and specific averments that the bond was a compliance with the requirements of the law.

No one, we presume, would contend for a moment that it would be sufficient to allege generally that appellant ten-

dered a good bond as required by law. And yet, if it is necessary to aver any of the contents of the bond so that the court can see whether it is in conformity with the law, it is certainly necessary to aver all that are material. To aver generally that the bond was in conformity with the statute, does not present any issue of fact that could be tried. It is an allegation of a mere conclusion of law, and such a mode of pleading is not permissible. The legislature has specified, with great particularity, the conditions to be inserted in a bond of this character, and yet we can not tell, from the petition before us, whether the bond tendered contained a single condition that the act requires. The petition was clearly defective in this respect.

It is no answer to what we have here said, that appellee issued licenses to others under the same circumstances that it refused them to appellant, nor is it material that it may have placed its refusal to issue them to appellant upon an improper ground. The fact that appellee may have improperly issued licenses to others by reason of a want of authority to do so, could afford no possible reason why it should issue them to appellant. And if appellee had no right to issue them, it was wholly immaterial upon what ground it placed its refusal.

It follows, from what we have said, that appellant failed to show, by his petition, a right to the relief sought, and the circuit court should therefore have sustained the demurrer to the petition and not to the answer.

The Appellate Court properly reversed the judgment of the circuit court, and the judgment of the Appellate Court must therefore be affirmed and the writ denied.

*Judgment affirmed.*