THE PEOPLE ex rel. William Conlon

v.

JOHN B. MOUNT, Mayor.

*Opinion filed October 19, 1900.*

1. MUNICIPAL CORPORATIONS—*ordinance in conflict with city charter is invalid.* An ordinance which does not comply with the city charter is as invalid as a statute which does not conform to the requirements of the State constitution.

2. SAME—*when license ordinance is invalid.* An ordinance passed in 1891 by a city organized under the general law, which provides that a party may obtain a license to sell liquor by complying with certain requirements "and paying for such license * * * at a rate that may be from time to time established per annum," is invalid in not complying with section 1 of the Dram-shop act of 1883, (Laws of 1883, p. 92,) which requires license fees to be paid in advance and fixes the minimum fee at $500.

3. SAME—*license ordinance should fix the amount of the fee.* Paragraph 46 of section 1 of article 3 of the City and Village act couples the power to license the sale of intoxicating liquor with the power to determine the amount to be paid for the license, and hence when the power to license has been called into exercise by ordinance the amount of the license fee must be fixed by the ordinance.

4. SAME—*amount of the license fee need not be fixed each year.* Paragraph 46 of section 1 of article 5 of the City and Village act, providing that a license to sell liquor shall not extend beyond the municipal year in which it shall be granted, does not mean that the amount of the license fee shall be fixed each year.

5. SAME—*power to license must be called into exercise by ordinance.* The power to license the sale of intoxicating liquor, including the power to determine the amount of the license fee, must be called into exercise by appropriate municipal legislation, and hence must be by the passage of an ordinance and not by resolution.

6. SAME—*when city must act by ordinance.* If the requirement that a municipal act shall be done by ordinance is implied by necessary inference, a resolution is not sufficient authority for such act.

7. SAME—*ordinance cannot be amended or repealed by resolution.* An ordinance cannot be amended, repealed or suspended by resolution, since the act which amends, modifies or repeals a law must be of equal dignity with the act by which the law was established.

8. Ordinance No. 796 of the city of Joliet, which fixes the license fee for selling intoxicating liquor at $1000, was not repealed by the general revision of the city ordinances in 1891 nor by the subse-

quent resolutions of the city council, and is therefore in force, and justifies the respondent's refusal to perform the act sought to be compelled by this petition for *mandamus.*

*People ex rel.* v. *Mount*, 87 Ill. App. 194, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

This is a petition, filed on July 7, 1899, by the People upon the relation of William Conlon for a writ of *mandamus* to compel appellee, as mayor of the city of Joliet, to sign a dram-shop license. The respondent filed his answer setting forth the reasons why he refused to sign said license. Issues were joined, and a jury was waived. The court, having heard the proofs, found for the respondent, and denied the writ, and rendered judgment against the relator for the costs. An appeal was taken from the judgment of the circuit court to the Appellate Court, and the judgment of the circuit court was affirmed by the latter court. The present appeal is prosecuted from such judgment of affirmance.

The petition for *mandamus* recites, that the city of Joliet is incorporated under the general laws of the State and authorized by its charter to license and regulate the sale of intoxicating liquors; that, before filing the petition, the city had adopted an ordinance in regard to the sale of intoxicating liquors, providing therein that licenses should be granted to applicants upon their complying with certain specified requirements, and "paying for such license for the use of said city at a rate that may be from time to time established per annum;" that, since July 1, 1892, and before the beginning of each municipal and fiscal year, the city council has regularly established the dram-shop license fee for each of said years, as provided by said ordinance; that, on June 26, 1899, the city fixed by resolution said license fee for the year commenc-

186—36

ing July 1, 1899, and ending June 30, 1900, at the sum of $500.00; that, on June 27, 1899, the relator petitioned the city council to grant him a license to keep a dram-shop for the municipal and fiscal year beginning July 1, 1899, and filed with the city clerk two dram-shop bonds, conditioned as required by the ordinance of the city and the laws of the State, which bonds were approved by the city council; that, on July 1, 1899, relator paid to the city treasurer the sum of $500.00 as a license fee, taking the treasurer's receipt therefor; that he presented this receipt to the city clerk and made demand upon him for a dram-shop license; that the clerk thereupon prepared and countersigned a license in the form prescribed in the ordinance, authorizing the relator to conduct a dram-shop from July 1, 1899, to July 1, 1900; that relator presented said license and receipt to the appellee and requested him as mayor to sign said license, but that appellee, the respondent below, refused to sign the same; that by the ordinances of the city no license shall be granted for a longer period than one year, and all licenses shall be signed by the mayor and countersigned by the city clerk under the corporate seal; that it was the duty of the appellee to sign said license and that his refusal so to do was unlawful and illegal.

The answer of the appellee based his refusal to sign the license upon the grounds, that the city council was not authorized and empowered to' fix or establish the license fee to be paid by dram-shop keepers for the municipal and fiscal year beginning July 1, 1899, by mere resolution or motion; that, if the council could lawfully fix such license fee by resolution or motion, and did do so on June 26, 1899, then such resolution was a legislative act and was subject to the veto of the mayor; that said resolution was subsequently vetoed by the appellee, as mayor, at the time and in the manner prescribed by the charter of the city, and was not passed over such veto, nor was any attempt made to pass it over such veto

in the manner provided by law; that, at the time of the adoption of said resolution fixing the license fee at $500.00, there was in full force an ordinance numbered 796 entitled: "An ordinance concerning dram-shop licenses," passed by the city council of the city of Joliet on the 27th day of June, A. D. 1889, and approved by the mayor of said city on the 28th day of June, A. D. 1889, which fixed the license fee at the sum of $1000.00 per annum, payable in advance; that said ordinance No. 796 has continued in force from the date of its approval, and is in full force and effect, and in no manner, repealed, superseded or otherwise vacated; and that relator's bond was not and never had been approved in the manner provided by section 5 of the Dram-shop act.

The facts as shown by the pleadings and proofs in the case are substantially as follows:

The city of Joliet is organized under the general Incorporation act of 1872. It has seven wards and fourteen aldermen, two being elected from each ward. In 1884 the ordinances of the city were revised, and, by chapter 25 of such revision, the city council was authorized to grant a license to keep a dram-shop to any person applying therefor in writing upon such person complying with certain requirements therein set forth "and paying for such license for the use of the said city at a rate that may be from time to time established per annum." On June 27, 1889, said ordinance No. 796 was adopted and on the next day approved by the then mayor of the city and is as follows:

"AN ORDINANCE CONCERNING DRAM-SHOP LICENSES.
"*Be it ordained by the City Council of the City of Joliet:*

"Sec. 1. That the dram-shop license of said city is hereby fixed at $1000.00 per annum payable in advance.

"Sec. 2. All ordinances and parts of ordinances in conflict herewith are hereby repealed."

In 1891 the ordinances of the city were again revised. Chapter 33 of the revision of 1891 was entitled "Intoxi-

cating Liquors;" and, among other things, it authorized the city council to grant a license to keep a dram-shop to any person applying therefor in writing, upon such person complying with certain conditions and requirements therein prescribed, "and paying for such license for the use of the said city at a rate that may be from time to time established per annum." The provision in regard to the payment of a license fee was the same as that in the revision of the ordinances made in 1884.

The revision of 1891 contained also the following section: "All ordinances of the city of Joliet heretofore passed in relation to the subject matter of or inconsistent with any of the provisions of the following chapters (naming them, chapter 33 included) be and the same are hereby severally repealed."

On June 27, 1892, the committee on licenses, to whom had been referred the several applications for dram-shop licenses, made a report which was adopted, and recommended that such applicants "be granted licenses and bonds approved upon their paying into the city treasury the sum of $1000.00." On June 28, 1893, said committee made a report which was adopted, recommending that licenses be issued to the applicants therein named on their "complying with the ordinance." On July 2, 1894, the following resolution was adopted: "*Resolved,* that the dram-shop license for the fiscal year commencing July 1, 1894, is hereby fixed at $1000.00, payable in advance." On June 27, 1895, said committee made a report, which was adopted, directing the mayor and city clerk to issue licenses to the applicants therefor therein named "upon payment into the city treasury of the license fee of $1000.00 each." On June 29, 1896, a resolution was adopted by the council fixing the license fee at $1000.00 per annum payable in advance. On June 30, 1897, said committee made a report, which was adopted, authorizing and instructing the mayor and clerk to issue licenses to certain applicants upon their paying into the city

treasury the license fee of $1000.00. On June 27, 1898, the same committee made a similar report, which was adopted, recommending the issuance of licenses upon the payment into the city treasury of a license fee of $1000.00.

On June 26, 1899, the city council of Joliet by a vote of eight yeas to six noes adopted a resolution or motion, that "dram-shop licenses beginning July 1, 1899, be and the same are hereby fixed at $500.00, payable in advance." This last resolution or motion was duly vetoed by the mayor in a message presented to the city council at a subsequent meeting; no attempt was made to pass the resolution over the veto. The relator filed the bonds required by the ordinances and statutes with the city clerk, and these bonds were presented to the city council and approved by a vote of eight yeas to six noes. On July 1, 1899, the relator deposited the sum of $500.00 with the city treasurer and presented his receipt therefor to the city clerk and procured from the city clerk a form of license, countersigned by him under the corporate seal, and presented the same to the appellee for signature, but the appellee refused to sign the license. Appellee also wrote to the city clerk and city treasurer notifying them "not to accept from any person or persons a license fee of $500.00 for each dram-shop, as fixed in said resolution."

Upon the hearing of the cause before the trial judge, certain propositions of law were submitted to the trial court by the relator herein to be held as law in the decision of the case. The refusal of these propositions, and exceptions made by the relator to such refusal, raise the questions which are discussed in the opinion.

HALEY & O'DONNELL, C. W. BROWN, and MARK G. HARRIS, for appellant.

RICHARD J. BARR, COLL McNAUGHTON, and GEORGE S. HOUSE, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first question presented for our considera-
tion is, whether the city of Joliet, whose charter is the
general act providing for the incorporation of cities and
villages, can fix and establish the license fee to be paid
by vendors of intoxicating liquors by mere resolution or
motion, or whether the power to fix and establish such
license fee, when exercised, must be exercised through
and by an ordinance duly enacted.

In order to determine this question it will be neces-
sary to examine some of the provisions of the charter of
the city of Joliet embodied in the general Incorporation
act above referred to.

By paragraph 4 of section 1 of article 5 of the City
and Village act "the city council in cities  *  *  *  shall
have the following powers:  *  *  *  *Fourth*—To fix the
amount, terms and manner of issuing and revoking li-
censes." By paragraph 46 of said section 1 the city coun-
cil in cities is clothed with the power "to license, regulate
and prohibit the selling or giving away of any intoxicat-
ing malt, vinous, mixed or fermented liquor, the license
not to extend beyond the municipal year in which it shall
be granted, and to determine the amount to be paid for
such license." The second proviso to paragraph 46 is as
follows: "*Provided further*, that, in granting licenses, such
corporate authorities shall comply with whatever general
law of the State may be in force relative to the granting
of licenses." (Hurd's Rev. Stat. 1897, pp. 268, 270). By
an act approved June 15, 1883, in relation to dram-shops
it is provided in section 1, "that hereafter it shall not be
lawful for the corporate authorities of any city, town or
village in this State, to grant a license for the keeping
of a dram-shop, except upon the payment, in advance,
into the treasury of the city, town or village granting
the license, (of) such sum as may be determined by the
respective authorities of such city, town or village, not

less than at the rate of $500.00 per annum." (Hurd's Rev. Stat. 1897, p. 699).

Under its charter, the city of Joliet, in granting licenses after the passage of the act of 1883, was obliged to comply with the provisions of that act, which related to the granting of licenses.   Chapter 33 of the Revised Ordinances of 1891 of the city of Joliet, entitled "Intoxicating Liquors," provided that the person desiring the license might obtain it by complying with certain requirements, "and paying for such license for the use of the city at a rate that may be from time to time established per annum."   Clearly this ordinance of 1891 does not conform to the city charter, inasmuch as the above quoted provision of the act of 1883 must be regarded as being written into the city charter, and as being a part of it.   The act of 1883 requires the license fee to be paid in advance into the treasury of the city; but the ordinance of 1891 simply conditions the issuance of the license upon the payment of such license fee without requiring the payment to be made in advance.   The act of 1883 requires that there shall be paid in advance for the license such sum, as may be determined by the respective authorities of the city, "not less than at the rate of $500.00 per annum;" but the ordinance of 1891 does not fix $500.00 as the minimum rate, but only provides for the payment at a rate that may be from time to time established.   By the act of 1883 the municipal authorities are obliged to require a license fee of not less than $500.00 per annum; by the ordinance of 1891 the city authorities of Joliet are left free to fix the license fee at any amount whether above or below $500.00 per annum.   Section 46 of the charter of the city of Joliet provides, that the license to be granted shall not extend beyond the municipal year in which it shall be granted; but, while it is true that the license to sell intoxicating liquor cannot be granted for a longer period than one year, yet there is nothing in the charter, which requires the amount of the license fee to

be fixed every year. The ordinance of 1891 seems from its language to provide, that the rate to be paid for the license is to be from time to time established per annum, that is to say, that the amount of the license fee is to be fixed every year. Section 46 as above quoted can bear no such interpretation.

It is clear from what has been said, that the ordinance of 1891, standing by itself, does not comply with the general law of the State in regard to dram-shop licenses, either in respect to the mode of payment, or the amount to be paid, or the time of fixing such amount. It is laid down in the authorities, that the charter of a city bears the same general relation to the ordinances of a city that the constitution of a State bears to its statutes. (1 Dillon on Mun. Corp.—4th ed.—sec. 308, p. 385, and notes; *Quinette* v. *St. Louis*, 76 Mo. 402). Hence, a city ordinance, which does not comply with the city charter, is as invalid as a statute which does not conform to the requirements of the State constitution. The charter of every municipal corporation, or the statute by which it is created, is its organic act, and the corporation cannot do any act, not authorized by such charter or by some legislative act applicable thereto. "All acts beyond the scope of the powers granted are void." (1 Dillon on Mun. Corp.—4th ed.— sec. 89, p. 146). Surely, in not prescribing the amount to be paid as a license fee the ordinance of 1891 is incomplete. But it is claimed by the appellant, that the incompleteness and omissions of the ordinance of 1891 are made up and supplied by the resolution of June 26, 1899. This resolution or motion, which was adopted by a vote of eight yeas to six noes, is to the effect that "dram-shop licenses beginning July 1, 1899, be and the same are hereby fixed at $500.00, payable in advance." The defects in the ordinance of 1891, as thus indicated, could not be remedied by the passage of the resolution of June, 1899.

The general rule is, that the power to license can only be exercised by ordinance, and not by resolution. Such

power is a dormant one, and must be called into exercise by the passage of an ordinance duly enacted. The authorities abundantly sustain this position. (13 Am. & Eng. Ency. of Law, p. 534; *Bull* v. *City of Quincy,* 9 Ill. App. 127; *Bills* v. *Goshen,* 117 Ind. 221; *People* v. *Village of Crotty,* 93 Ill. 180; *People* v. *Cregier,* 138 id. 401).

In the American and English Encyclopedia of Law, (vol. 13, p. 534,) the rule is thus stated: "When a municipal corporation is duly authorized to exact licenses, the power can only be exercised by the passage of an ordinance specifying the details necessary to be pursued." Paragraph 46 of section 1 of article 5, as above quoted, couples the power of the city council to license the selling of intoxicating liquor with the power to determine the amount to be paid for such license. By that section the power to license, and the power to determine the amount to be paid for the license, are also coupled with the requirement, that the license shall not extend beyond the municipal year in which it is granted. It follows that, when the power to license the sale of intoxicating liquor is exercised by the passage of an ordinance, the determination of the amount to be paid for the license must at the same time be embodied in the ordinance. The amount was not embodied in the ordinance of 1891.

In *People* v. *Village of Crotty, supra,* which was a petition for *mandamus* against the village for the purpose of compelling it to issue licenses to the relator therein to keep a dram-shop and pool table, reliance was placed upon certain resolutions or motions adopted at meetings of the board of trustees, which fixed the amounts of such licenses for the municipal year; and, in that case, after quoting paragraph 46 of section 1 of the City and Village act above referred to, we said (p. 188): "It is clear, from the first of the above cited provisions of the statute, that the legislature has given appellee the power to license, regulate and prohibit the sale of intoxicating liquors. But the mere grant of this power by the legislature would

not of itself authorize the village authorities to issue a license. This power to license, regulate and prohibit is a dormant one, and affords no authority to issue licenses until called into life and put in operation by appropriate legislation by the municipal authorities. Without the adoption of a general ordinance on the subject, author-izing the issuing of licenses, and specifying who shall issue them, the length of time they shall run, the amount to be paid by the applicant, the time and manner of pay-ment, etc., the village authorities are powerless to issue license to any one." In the *Village of Crotty case* the gen-eral ordinance on the subject, which authorizes the issu-ance of licenses, is not only required to specify who shall issue them, and the length of time they shall run, but also to specify the amount to be paid by the applicant and the time and manner of payment. The ordinance of 1891, now under consideration, fails to meet the require-ment thus laid down in the case last referred to.

The case of *People* v. *Village of Crotty, supra,* was referred to and endorsed in the later case of *People* v. *Cregier, supra,* where we said (p. 419): "Subdivision 96 of section 1, arti-cle 5, of the general law in relation to the incorporation of cities and villages gives power to the city councils of cities and the president and board of trustees of villages to pass all ordinances, rules and regulations proper or necessary to carry into effect the various powers granted by said section, and it is accordingly held that the power to license, regulate and prohibit the sale of intoxicating liquors must be exercised by a city or village by means of an ordinance on that subject, passed by the proper municipal authorities. The mere grant of this power does not of itself authorize the corporate authorities to issue licenses. The power is dormant until called into exercise by appropriate municipal legislation.—(*People* v. *Crotty,* 93 Ill. 180)." In the *Cregier case* it was also said (p. 421): "We would not be understood as holding that a board of trustees may, by resolution merely, license one

and refuse to license another having precisely the same qualifications and local surroundings, our view being that an ordinance must, in advance of the issuing of any license, prescribe the terms and conditions upon which licenses shall be granted, so that all in like situation, with like surroundings and having like qualifications, shall have equal opportunity to avail themselves of its privileges."

The power to license, including the power to fix the amount of the license fee, is a power which must be called into exercise by appropriate municipal legislation. A municipality can only legislate through the passage of ordinances, and not by the passage of mere resolutions. It is well settled, that acts of legislation by a municipal corporation, which prescribe a permanent rule of conduct or government, and which are to have a continuing force and effect, must be established by ordinance. (*Chicago and Northern Pacific Railroad Co.* v. *City of Chicago,* 174 Ill. 439; *Village of Altamont* v. *Baltimore and Ohio Southwestern Railway Co.* 184 id. 47). "So, matters upon which the council wishes to legislate must be put in the form of an ordinance, and all acts that are done in its ministerial capacity may be in the form of resolutions." (17 Am. & Eng. Ency. of Law, p. 236). "Resolutions are special and temporary, applicable only to a single matter of passing moment; ordinances are permanent regulations, applicable to all states of facts thereafter arising within the scope of their provisions." (Horr & Bemis on Mun. Police Ordinances, sec. 210 *a*).

Whether an act of legislation by a municipal corporation prescribes a permanent rule of conduct or government, and whether or not it is to have a continuing force and effect, depends upon the nature of the subject matter legislated upon, and not upon the mere option of the city council. The subject of granting licenses to sell intoxicating liquor and fixing the amount of the license fee therefor is a subject which, in its nature, requires

legislation of a permanent character and of continuing force and effect. It does not follow, because the license to sell liquor can only extend for one year, that, therefore, the amount to be paid as a license fee must be changed annually or fixed anew every year. The amount of the fee should be fixed by an act of legislation, and remain, as fixed, for one year or ten years, or longer, until the legislative body passes a new measure changing the amount. One of the most important acts, which a common council is called upon to perform, is not merely the granting of licenses to sell intoxicating liquor, but the fixing of the amount to be paid for such licenses.

The character of saloons where liquor is sold, and the character of the men who sell liquor in such saloons, will often be determined or affected by the amount of the license fee to be paid. The passage of the act of 1883, making $500.00 per annum the minimum fee for the issuance of such licenses, grew out of the prevailing idea, that the character of the places, where liquor is sold, will be improved by increasing the amount of the license fee. Hence, the matter of fixing the amount of the license fee is a matter which, in no small degree, concerns the public welfare. This being so, it would seem to follow necessarily that an enactment which fixes the amount of a license fee for the sale of intoxicating liquor, should be embodied, not in a resolution which is special and temporary and applies only to a single matter of passing moment, but in an ordinance which is a permanent regulation. An ordinance, which fixes the amount of the fee, is a regulation which applies to every state of facts thereafter arising within the scope of its provisions. Every man, who desires a license to sell liquor, will thereby be informed that there is a fixed amount which hè must pay per annum, embodied in the highest form of municipal legislation, that is to say, an ordinance.

It is said, however, in behalf of the appellant, that section 1 of article 5 of the City and Village act, which

defines the powers vested in the city council, nowhere requires the granting of licenses, or the fixing of the amount of license fees, to be embodied in ordinances rather than in resolutions.   The general rule is, accordingly, invoked that, where a charter commits the decision of a matter to the city council and is silent as to the mode, the decision may be evidenced by resolution, and need not necessarily be by an ordinance.   It does not, however, necessarily follow that, because the charter does not in express terms require an act to be done by an ordinance, it must, therefore, be effected by a mere resolution.  On the contrary, where the requirement, that the municipal act should be done by ordinance, is implied by necessary inference, a resolution is not sufficient, but an ordinance is necessary.   (*Chicago and Northern Pacific Railroad Co.* v. *City of Chicago, supra; Village of Altamont* v. *Baltimore and Ohio Southwestern Railway Co. supra; Atchison Board of Education* v. *DeKay,* 148 U. S. 599;  2 Dillon on Mun. Corp.—4th ed.—sec. 769, and notes; *Newman* v. *Emporia,* 32 Kan. 456).

While the charter of the city of Joliet does not in express terms require the power to license to be embodied in an ordinance duly enacted, yet such requirement is clearly implied by necessary inference from the provisions of the charter.

The power to grant licenses to sell intoxicating liquor, and to fix the amount to be paid therefor, is a power which is vested in the city council in cities.   Section 1 of article 3 of the City and Village act provides that "the city council shall consist of the mayor and aldermen." (Hurd's Rev. Stat. 1897, p. 263).   The mayor is thus made by express statutory provision a part of the common council, and has a right to take part in the legislation passed by the common council.   Section 18 of article 3 provides that "all ordinances passed by the city council shall, before they take effect, be deposited in the office of the city clerk; and if the mayor approves thereof,

he shall sign the same, and such as he shall not approve he shall return to the council, with his objections thereto, in writing, at the next regular meeting of the council, occurring not less than five days after the passage thereof.   *   *   *   But in case the mayor shall fail to return any ordinance, with his objections thereto, by the time aforesaid, he shall be deemed to have approved such ordinance, and the same shall take effect accordingly." Section 19 of article 3 provides that "upon the return of any ordinance by the mayor, the vote by which the same was passed shall be reconsidered by the council; and if, after such re-consideration, two-thirds of all the members elected to the city council shall agree, by yeas and nays, to pass the same, it shall go into effect, notwithstanding the mayor may refuse to approve thereof."

It thus appears, that the mayor has the veto power in reference to legislation passed by the common council, and that, where he exercises that veto power, such legislation cannot be effective, unless it is passed by two-thirds of all the members elected to the common council. The mayor is thus vested by law with the power, and has imposed upon him the duty, of supervising all legislative enactments by the city council. He is clothed with the duty of exercising a veto for the purpose of making this supervisory power effectual. This supervision by the mayor over municipal legislation was evidently intended by the legislature to operate as a check upon hasty and unwise legislation.

Mere resolutions do not need to be submitted to the mayor for his approval. (Horr & Bemis on Mun. Police Ordinances, sec. 210; *Burlington* v. *Dennison*, 42 N. J. L. 165). The wise and salutary provision of the statute, which clothes the mayor with the veto power, may be defeated by a city council by the simple election on its part to change the form of its legislative acts into resolutions, instead of embodying them in ordinances, if it be true that municipal legislation can be accomplished

by mere resolutions.  The case at bar furnishes an instance of the danger of allowing important municipal legislation to take the form of a resolution, in that it destroys the supervisory power of the mayor of the city. It is well said by the Appellate Court in their opinion, delivered upon the decision of this case: "While, therefore, it requires eight votes to pass an ordinance of the city and ten votes to pass it over a veto, a majority of a quorum or five members of the council can pass a resolution, and the mayor cannot interfere with it."  It is, therefore, a fair matter of inference, that the legislature intended the power to license, and fix the amount of license fees, to be exercised by the passage of ordinances, because otherwise the supervisory power of the mayor would be interfered with.

Dillon in his work on Municipal Corporations, (vol. 1, 4th ed. sec. 273,) says: "Where the power to legislate for the corporation is vested in 'the mayor and councilmen,' the council by itself cannot legislate, but must act in conjunction with the mayor.  In deciding the point the court observes: 'If a simple resolution (instead of an ordinance) would be sufficient, yet, before it would have any validity, it would necessarily have to be signed by the mayor as a part of the law-making power; the co-ordinate action of both is required.'" (*Saxton* v. *Beach*, 50 Mo. 488; *Saxton* v. *St. Joseph*, 60 id. 153; 1 Dillon on Mun. Corp.— 4th ed.—sec. 271).   "Where the charter vests the affairs of a city in the hands of the mayor and councilmen, the city council has no power except to act in conjunction with the mayor."  (15 Am. & Eng. Ency. of Law, p. 1032; 1 Dillon on Mun. Corp.—4th ed.—secs. 309, 246).

Paragraph 48 of section 1 of article 5, defining the powers of the city council, provides that the city councils in cities shall have the power "to forbid and punish the selling or giving away of any intoxicating" liquor to any minor, etc.  Section 2 of the act of March 30, 1874, in relation to dram-shops, provides that "whoever, not

having a license to keep a dram-shop, shall, by himself or another, * * * sell any intoxicating liquor in any less quantity than one gallon, or in any quantity to be drank upon the premises, or in or upon any adjacent room, building, yard, premises or place of public resort, shall be fined not less than $20.00 nor more than $100.00, or imprisoned in the county jail not less than ten nor more than thirty days, or both in the discretion of the court." (Hurd's Rev. Stat. 1897, p. 699). Section 436 of chapter 33 of the Revised Ordinances of 1891 of the city of Joliet provides, that no person, except regularly licensed dram-shop keepers, etc., shall sell or give away any intoxicating liquors in any quantity whatsoever; and further provides, that any person, violating any of the provisions of the section, shall on conviction forfeit and pay not less than $25.00 nor more than $100.00 or be imprisoned in the bridewell for a term not exceeding sixty days at hard labor, or both, as the court may order. Section 439 of said Revised Ordinances of 1891 also provides that any licensed person, who shall sell liquor to a minor, and shall be convicted of doing so, shall be fined for the offense.

It is idle to suppose, that the legislature intended a power, the necessary exercise of which involves the imposition of penalties and punishment, should be called into operation by the passage of a mere resolution. The power to license the vending of intoxicating liquors is in the nature of a police regulation; and paragraph 66 of section 1 of article 5, as well as the spirit and tenor of all the other paragraphs of that section, indicates that police regulations must be embodied in ordinances. Section 3 of article 5 provides for the publication in a certain way of all ordinances, imposing any fine, penalty, imprisonment or forfeiture; section 4 makes provision for the manner of proving ordinances; sections 5 and 7 provide for the manner, in which actions shall be brought by the city for the recovery of fines and the enforcement

of penalties under ordinances; while by section 6 it is provided, that "all moneys collected for licenses shall be paid into the treasury of the corporation at such times and in such manner as may be prescribed by ordinance." There are no provisions in the sections, thus defining the powers of the city council, which require the same things to be done under resolutions.  In *People* v. *Cregier, supra,* we said (p. 418): "The tendency of the liquor traffic is so completely shown by all human experience, that from an early day said traffic has been subjected in this State to the surveillance and control of the police power, and we presume such has been the case in most, if not all, civilized communities." The granting of licenses, and the fixing of the amount of license fees, is an essential part of the surveillance and control, to which the liquor traffic is subjected in this State. If that control is exercised as a part of the police power of a municipality, it is absurd to attribute to the legislature the intention that measures relating to it should be put in the form of mere temporary resolutions.

The first proviso to paragraph 46 of section 1 of article 5 provides, that the city council in cities "may grant permits to druggists for the sale of liquors for medicinal, mechanical, sacramental and chemical purposes only, subject to forfeiture, and under such restrictions and regulations as may be provided by ordinance." It is here required, that the restrictions and regulations, under which druggists are permitted to sell liquors for the purposes mentioned must be provided by ordinance.  One of the restrictions and regulations, under which dram-shop keepers are authorized to sell liquor, is that they shall pay a sum as a license fee, not less than at the rate of $500.00 per annum.  There is no reason why the restrictions and regulations, under which druggists are placed in relation to this matter, should be embodied in an ordinance, and the restrictions and regulations, under which ordinary dram-shop keepers are placed, should not be

186—37

embodied in an ordinance, or should take the form of a mere resolution. The very fact, that the restrictions and regulations to be imposed on druggists must be provided for by ordinance, indicates the intention of the legislature to have been, that all restrictions and regulations, under which the sale of liquor was to be permitted, should be provided for by ordinance.

Many of the cases, referred to by counsel for appellant, which hold that the amount of the license fee can be fixed by a resolution, are cases arising in States and under laws where resolutions passed by common councils are so far regarded as having the force of ordinances, that the mayor of the city can exercise his veto power in reference to such resolutions. Where resolutions are so far regarded in the nature of ordinances that they are subject to the veto power, it may well be held that the exercise of the power to license may be embodied in a resolution, as well as in an ordinance. Such a case is the case of *First Municipality* v. *Cutting*, 4 La. Ann. 336, but, here, it is conceded that a mere resolution does not have the force of an ordinance so far as to justify the mayor in exercising his veto power in relation to it.

Upon this branch of the case we are of the opinion, that the resolution of June 26, 1899, passed by the city council of Joliet, was ineffective to establish the amount of the license fee to be paid by parties applying for license to sell liquor.

*Second*—It is contended by the appellant in this case, that ordinance No. 796, passed on June 27, 1889, and fixing the dram-shop license of the city at $1000.00 per annum, payable in advance, had been repealed, and was not in force on July 1, 1899. It cannot be claimed with any show of reason, that said ordinance was repealed by the resolution of June 26, 1899. An ordinance cannot be amended, repealed or suspended by a resolution; the act which amends, modifies or repeals a law should be of equal dignity with the act which enacts or establishes

the law.   A resolution or order is not a law, but merely the form in which the legislative body expresses an opinion.   (*Chicago and Northern Pacific Railroad Co.* v. *City of Chicago, supra;* Horr & Bemis on Mun. Police Ordinances, sec. 61; *Jones* v. *McAlpine,* 64 Ala. 511).

But it is claimed that the ordinance of June 27, 1889, was repealed by chapter 33 of the general revision of the ordinances of the city passed in 1891.   The part of chapter 33, which is said to operate as a repeal of the ordinance in question, is that portion of section 437, which contains the words "and paying for such license for the use of said city at a rate that may be from time to time established per annum."   As has already been shown, this portion of the ordinance of 1891 cannot be regarded as otherwise than invalid because of its conflict with the city charter in the respects already named.   Being invalid, it could not operate as a repeal of the ordinance of June 27, 1889.   Nor does the section in the revision of 1891, which provides that all ordinances of the city theretofore passed "in relation to the subject matter of, or inconsistent with any of the provisions of the following chapters  *  *  *  be and the same are hereby severally repealed," operate as a repeal of the ordinance of 1889. The latter ordinance related to the amount of the dram-shop license, which was thereby fixed at $1000.00 per annum, payable in advance.   There was nothing in the chapters referred to of the revision of 1891 relating to the subject of fixing the amount of the dram-shop license. Nor is there any inconsistency between the ordinance of 1889 and the provisions of the chapters referred to in the revision of 1891.   Upon this subject we concur with the following statement made by the Appellate Court in their opinion: "Ordinance No. 796 relates solely to the amount of the license fee to be paid which it placed at $1000.00. While they are both upon the general subject of liquor licenses, yet the particular subject of each is different from the other.   The subject matter of one is the grant-

ing of licenses and the conditions imposed upon those desiring to sell intoxicating liquors; the subject of the other is the rate to be paid by such parties for the privilege. The two are not inconsistent with each other, but both can stand; and neither interferes with the operation of the other."

We are of the opinion, that the ordinance of June 27, 1889, fixing the dram-shop license of the city at $1000.00 per annum, payable in advance, was in force in July, 1899, and that, therefore, the mayor was justified in refusing a license based upon the payment of a license fee of only $500.00.

For the reasons above stated the judgment of the Appellate Court is affirmed.　　　　*Judgment affirmed.*