ROMEO DeVITA, PLAINTIFF-APPELLANT, v. HOUSING AUTHORITY OF THE CITY OF PATERSON AND WILLIAM BENTELE, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 15, 1954—Decided July 6, 1954.

Before Judges EASTWOOD, FREUND and FRANCIS.

*Mr. Saul M. Mann* argued the cause for the appellant.

*Mr. Ervan F. Kushner* argued the cause for the respondents (*Mr. Harry Zax,* attorney).

The opinion of the court was delivered by
FRANCIS, J. A. D.   The issue on this appeal is two fold:
(1) the validity of the appointment of appellant for an in-

definite term as secretary-treasurer and executive director of the respondent housing authority, and (2) whether, if such appointment was valid, appellant's veteran status gives him tenure during good behavior. The trial court entered summary judgment in favor of the authority.

The statute under which the housing authority was created provides that:

"It may employ a secretary (who shall be executive director), technical experts and such other officers, agents and employees, permanent and temporary, as it may require, and shall determine their qualifications, duties and compensation." *N. J. S. A.* 55:14A-6.

The statute also confers on the authority the power:

"* * * to make and from time to time amend and repeal bylaws, rules and regulations, not inconsistent with this chapter, to carry into effect the powers and purposes of the authority." *N. J. S. A.* 55:14A-7(a).

■ It will be observed that section 6 fixes no term for the executive director. In this situation the authority may by its bylaws establish the term or direct that upon appointment a term shall be fixed. *Sheridan v. McCurnin,* 124 *N. J. L.* 493, 499 (*Sup. Ct.* 1940); *McGrath v. City of Bayonne,* 85 *N. J. L.* 188, 192 (*E. & A.* 1913); *Bohan v. Township of Weehawken,* 65 *N. J. L.* 490, 493 (*Sup. Ct.* 1900); *Hardy v. City of Orange,* 61 *N. J. L.* 620, 622 (*E. & A.* 1898); *Gilhooly v. Board of Chosen Freeholders of Hudson County,* 43 *A.* 569 (*Sup. Ct.* 1899, not in official reports); *Kennon v. Schlesinger,* 182 *S. W. 2d* 373 (*Tex. Ct. Civ. App.* 1944). When it does so, the bylaw has the force and effect of law (*McGrath v. City of Bayonne, supra; Bell v. Atlantic City,* 89 *N. J. L.* 443, 445 (*Sup. Ct.* 1916); *Hardy v. City of Orange, supra*), and the tenure prescribed or the duty imposed to set the term is binding on the authority and would control an appointment until the bylaw is amended or repealed.

Pursuant to section 7(a) of the act, bylaws were adopted by respondent. Section 4 of the bylaws says:

"Secretary-Treasurer. The Secretary shall be the Executive Director of the Authority * * *."

Section 6 provides:

"Any person appointed to fill the office of Secretary-Treasurer, or any vacancy therein, *shall have such term as the Authority fixes* * * *."

Section 7 says:

"* * * When the office of Secretary-Treasurer becomes vacant, the Authority shall elect a successor from its membership at the next regular meeting, and such election shall be for *the unexpired term.* * * *."

Article IV dealing with amendments to the bylaws provides:

"The By-laws of the Authority shall be amended only with the approval of at least three of the members of the Authority at a regular or special meeting but no amendment shall be adopted unless at least 7 days' written notice thereof has been previously given to all of the members of the Authority."

Plainly these bylaws bound the authority to designate a term upon the appointment of the secretary-treasurer (executive director). *Burke v. Kenny,* 9 *N. J. Super.* 160, 165 (*App. Div.* 1950).

There being a vacancy in the office of secretary-treasurer by reason of the death of the incumbent, on February 13, 1951 respondent adopted a resolution appointing appellant Romeo DeVita to fill the vacancy and to be executive director. No term was fixed although the resolution recited that the appointment was being made "in compliance with the bylaws of the Housing Authority."

It is conceded that DeVita is an honorably discharged veteran of World War II. Following the appointment he served

until December 8, 1953, when a resolution was voted removing him as of December 15, 1953. On the same day by resolution respondent William H. Bentele was named as his successor for a term of one year, ending December 15, 1954.

DeVita protests his summary ousting, claiming that, as an honorably discharged veteran, under *N. J. S. A*. 38:16–1 and *N. J. S. A*. 38:23*A*–3 he was removable only for just cause and after hearing. Specifically he points out that the statute authorizing the establishment of the housing authority does not designate a term for the executive director. Therefore he insists that power existed to appoint him for an indefinite term, and since the resolution making him executive director does not specify a term, his employment continues during good behavior. And he contends that the bylaw recited above does not interfere with that result.

*N. J. S. A*. 38:16–1 ordains that any honorably discharged veteran, as defined therein, appointed to any paid employment, position or office under the government of the State, or any county or municipality, *whose term is not fixed by law,* shall not be removed therefrom except for good cause shown after a fair and impartial hearing, but shall hold his employment, position or office "during good behavior, and shall not be removed for political reasons." And *N. J. S. A*. 38:23*A*–3 provides that the persons entitled to such tenure advantages "shall include all those [veterans] engaged in the public service in any of its branches within this State." (Insertion ours)

No claim is made that DeVita qualifies for tenure under the classified section of the Civil Service Act. *R. S*. 11:22–3. In fact, as executive director he was expressly included in the unclassified service. *N. J. S. A*. 11:22–2; *L*. 1948, *c*. 121, *p*. 836. As late as 1953, eight years after provision was first made for civil service protection for employees of municipal housing authorities (*N. J. S. A*. 55:14*A*–6.1; *L*. 1943, *c*. 64, *p*. 261, § 1), the Legislature recognized that the secretary (executive director) is in the unclassified service. Section 6.3 of the amended act provides that a secretary of

such authority who is in "the unclassified service of civil service, at the time this act becomes effective * * * and who has held or shall continue to hold said position continuously for five years from the date of his original appointment, shall not be removed from such position except for good cause shown after a fair and impartial trial, but shall hold his position during good behavior." *N. J. S. A.* 55:14A–6.3; *L.* 1953, *c.* 390, § 1. This legislation is not inconsistent with an awareness that such authorities possessed power to attach a definite term to the employment of an executive director.

It is undisputed that the bylaws referred to were in full force and effect on February 13, 1951, when DeVita was appointed. No written notice of any amendment or repeal of them had been given before the resolution was adopted and no action was taken with regard to them. So long as they were in existence the designation of a term for DeVita was just as requisite as if a mandate to do so appeared in section 6 of the enabling statute. 62 *C. J. S., Municipal Corporations,* § 411, *page* 784, § 434, *page* 832. And there can be no doubt that if the statute had so directed, the tenure sought could not be recognized. *Talty v. Board of Education,* 10 *N. J.* 69, 71 (1952).

In *Hicks v. Long Branch Commission,* 69 *N. J. L.* 300 (1903), the Court of Errors and Appeals, speaking of the force of rules adopted by the city commission for the control of its action, said:

"The standing rules, adopted by ordinance under the express authority of the charter, as before stated, provide that 'on every vote relating to any special appropriation the yeas and nays shall be taken and recorded.' This rule was as binding upon the commission and its members as any statute or other law of the commonwealth. (Citing cases.) Its importance is manifest. It is designed to secure, in matters relating to the public funds, deliberate action on the part of each commissioner, and immediate as well as permanent public evidence thereof, readily accessible to the voters of the municipality, on which their representatives may be held responsible. 1 *Dill, Mun. Corp.* (4th ed.), § 291; 20 *Am. & Eng. Enc. Law* (2d ed). 1214. It cannot be dispensed with, except in accordance with the standing rules, and no attempt was made to set it aside. * * *

For failure to take and record the yeas and nays, we think the resolution was not lawfully passed, and should be set aside." (69 *N. J. L.* at *pages* 306, 307)

*Eggers v. City of Newark,* 77 *N. J. L.* 198 (*Sup. Ct.* 1908), presented an analogous problem. The board of street and water commissioners of the City of Newark passed a bylaw which required that:

" '* * * All ordinances except those which are based on a published notice of intention shall, between their first and second readings, be published at least five times in at least two of the approved newspapers designated by the Board.' "

In the consideration of a particular ordinance the commissioners ignored this bylaw following the adoption of a motion for the suspension of rules. The Supreme Court, after referring to the statute which conferred the authority on the board to adopt bylaws in much the same language as in the present case, had this to say:

"* * * Pursuant to this provision, the by-laws already referred to were adopted, and constituted the working regulations governing its action so far as not regulated by the higher authority of the statute; and, as the powers given by that statute do not include the power to suspend the by-laws, but only to alter, modify, or repeal them, it may well be doubted whether it would be competent to provide in the by-laws themselves for their temporary suspension, and still less to suspend them, in the absence of such provision. But on examination of the by-laws themselves we find no authority for suspending the provisions relating to the passage of ordinances." (77 *N. J. L.* at *pages* 203, 204)

The ordinance was set aside because of the violation of the bylaws, the court declaring:

"* * * if they can be rendered nugatory by the suspension of a mere rule of order, the by-laws are little more than a suggestion, instead of being, as they should be, a set of regulations for the transaction of public business by a public body, on which regulations the public itself has a right to rely." (77 *N. J. L.* at *page* 204)

To like effect are *Erie R. Co. v. City of Paterson*, 79 *N. J. L.* 512 (*E. & A.* 1910); *Hukle v. City of Huntington*, 134 *W. Va.* 249, 58 *S. E.* 2d 780 (*Sup. Ct.* 1950); *Meffert v. Brown*, 132 *Ky.* 201, 116 *S. W.* 779, 116 *S. W.* 1177 (*Sup. Ct.* 1909); *State ex rel. Maxey v. Swindell*, 146 *Ind.* 527, 45 *N. E.* 700 (*Sup. Ct.* 1896); and *cf. Meyer v. Seifert*, 216 *Ark.* 293, 225 *S. W.* 2d 4 (*Sup. Ct.* 1949); *People ex rel. Conlon v. Mount*, 186 *Ill.* 560, 58 *N. E.* 360 (*Sup. Ct.* 1900).

The public has a substantial interest in problems of tenure and pensions (see *N. J. S. A.* 43:4–1, 2, 3) in the governmental service and it is entitled to assume that such benefits will not be conferred when they are opposed to the apparent policy and rule of the body having authority to confer them. Here the controlling bylaw made mandatory the fixing of a term which would preclude the tenure sought by appellant. Until repealed or amended, that bylaw could not be ignored nor could it be repealed impliedly by a resolution of appointment which is antagonistic to it.

██ Under the bylaw the only appointment possible was one designating a term. So if a conformable resolution were adopted, the statute (*N. J. S. A.* 38:16–1) on which appellant relies would not be applicable because of the stated duration of the employment. The resolution with which we are concerned, being contrary to the bylaw (although declared to be in compliance with it), did not and could not confer tenure during good behavior and consequently the power to remove appellant existed.

In view of the determination we have reached, it is not necessary to consider the other issues raised.

The judgment is affirmed.