# Jones & Co. v. McAlpine.

*Mandamus to Municipal Officers, in matter of License for Retailing Spirituous Liquors.*

1. *Municipal ordinance; how enacted.*—A recital in the minutes of the proceedings of the board of mayor and aldermen of a municipal corporation, in these words, "On motion, the license on spirituous liquors was changed from $250 to $500 per year, and the mayor was instructed to prepare an ordinance covering said changes in license laws," does not show a complete legislative act, and does not change the existing law; although the minutes were kept by the clerk, and signed by the mayor, as required by the charter, which also declares that they "shall have the force and effect of a record." Until a new ordinance is prepared and adopted, as required by the charter, the existing ordinance remains of force.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. JOHN HENDERSON.

In this case, the appellants, as partners under the firm name of C. S. Jones & Co., applied by petition to the Hon. JOHN HENDERSON, presiding in the Circuit Court of Talladega, for a writ of *mandamus*, directed to F. C. McAlpine, as treasurer, and Thomas S. Plowman, as mayor of the city of Talladega, to compel them to issue a license to the petitioners for retailing spiritous liquors in said city for and during the year 1880. The defendants filed an answer to the petition; and an issue of fact being formed, on the evidence adduced, the circuit judge refused to award a *mandamus*. The appeal is taken from this judgment. The material facts are stated in the opinion of the court. There is no assignment of errors on the record; no attorneys' names are entered on the docket, and no briefs are on file.

[Jones & Co. v. McAlpine.]

BRICKELL, C. J.—The mayor and aldermen of the city of Talladega have power to levy taxes on any business, profession, trade or calling, carried on in the city, and on all other subjects of taxation on which State and county taxes are now levied, or on which hereafter a State tax may be levied. They have, also, power to license and regulate retailing of liquors within the corporate limits, and to provide for annulling and revoking such licenses, on good cause being shown. The clerk of the city is required to keep a regular record of the proceedings, orders, regulations, and ordinances of the board of mayor and aldermen; "which shall be read to, and signed by the mayor, or presiding chairman, and the same shall have the force and effect of a record."—Pamph. Acts, 1869-70, act No. 225, p. 247. On the 9th May, 1877, in the exercise of this power, an ordinance was adopted for licensing retailers of spirituous liquors, imposing upon them an annual tax of two hundred and fifty dollars. On the 19th April, 1880, the minutes, or record of the proceedings of a meeting of the mayor and aldermen, show that, "on motion of Alderman Thornton, the license on spirituous or vinous liquors was changed from $250, for retail, to $500 per year, quarterly in advance; and for wholesale, from one (1) hundred dollars to two (2) hundred dollars per year, quarterly in advance; also, the licenses on billard-tables were changed from $15 to $25 per year; *and the mayor was instructed to prepare an ordinance covering said changes in license law.*" The mayor subsequently prepared an ordinance, revising former ordinances touching these subjects, and conforming them to the changes expressed in the resolution; but it was not presented to, or adopted by the mayor and aldermen. On the 22d April, 1880. the appellants applied for a license to retail spirituous or vinous liquors, and offered to pay therefor $250, the tax imposed by the ordinance of May 9th, 1877. It was refused them, unless they would pay $500, the tax specified in the resolution of April 19th, 1880. Thereupon, this application was made for a *mandamus*, to compel the issue of the license.

It is obvious, that the municipal officers who were charged by the ordinance with the ministerial duty of issuing licenses, did not refuse the application of the appellants in the exercise of any discretion with which they were clothed (if they are clothed, with any) to determine whether, in the particular instance, a license should or should not issue. The refusal was based wholly upon their construction of the ordinances— of the law of the city; and if that construction is erroneous— if the only tax they could exact for the license was that imposed by the ordinance of May 9th, 1877—a *mandamus* is

the appropriate remedy to compel them to issue the license. High on Extraordinary Remedies, § 327. The case lies, therefore, within a very narrow compass, and depends upon the question, whether the resolution of April 19th, 1880, was a complete legislative act, operating a repeal of the ordinance of May 9th, 1877, or merely contemplates the preparation of an ordinance conforming to it, which would be subsequently adopted.

It is apparent from the charter, that it is contemplated all the ordinances—all the local laws of the city—shall not only be in writing, but be spread on the minutes or records of the mayor and aldermen. The clerk, an officer provided for by the charter, charged with the duty of keeping and certifying the proceedings, orders, regulations, and ordinances of the board, and which, when certified by him, are *prima facie* evidence in all courts, is required to keep a regular record of all proceedings, ordinances, &c., which is also to be signed by the mayor. The record must show all such proceedings and ordinances. They cannot rest, wholly or partly, in parol. The ordinance, operating as a local law, would not be capable of promulgation, essential to the validity of every law, State or municipal, if not reduced to writing. Without resorting to evidence *dehors* the municipal records, it could not be known whether the mayor had prepared an ordinance, as he was instructed, conforming to the resolution ; and it is only when that ordinance was prepared, that the changes of the former ordinance would be effectual.

Independent of that consideration, the resolution could not have been intended as an ordinance—as in itself a complete legislative act. It was a deliberate expression of the opinion of the mayor and aldermen, that the proposed changes in the former ordinance were expedient, and should be made ; and with a view of making them, the mayor was instructed to prepare an ordinance for the adoption of the mayor and aldermen. This course of proceeding cannot be unusual in the legislative bodies of municipal corporations ; as it is not in other legislative bodies, to instruct a committee to prepare and report a bill with defined provisions. However fully and positively the opinion of the body may be expressed, it is no more than a resolution, an order of a special and temporary character, and not a law or ordinance. It furnishes a rule of conduct for the committee, or, in this case, for the mayor, but not a rule of conduct or government for the corporation, or for those who are bound and affected by the municipal law. Until an ordinance had been adopted by the mayor and aldermen, changing the ordinance of May 9th, 1877, that ordinance remained of full force, though there was an intention to

change, and a declaration of the will of the board that it should be changed. The appellants were, consequently, entitled to the license demanded.

The rulings of the Circuit Court were in conflict with these views; and its judgment must be reversed, and the cause remanded.