[No. 10890.   Department One.   June 3, 1913.]

THE CITY OF SPOKANE, *Respondent*, v. W. M. RIDPATH *et al.*,
*Appellants*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—PETITION — SIGNATURES
—JURISDICTION TO ORDER IMPROVEMENT. That an initiatory petition
for an improvement was not signed by a majority of the property
owners, as required by the city charter, is not a jurisdictional defect
where the charter also authorized the improvement without such
signatures if ordered by a two-thirds vote of the council, and the
council afterwards ordered the improvement by a unanimous vote.

SAME—PROCEEDINGS—"RESOLUTION" — NECESSITY. A charter pro-
vision requiring a city council ordering an improvement to direct
the board of public works, "by resolution" to prepare a report, is
substantially complied with by ordering such report "on motion";
there being, in substance, no difference between a resolution and a
motion.

SAME—ASSESSMENTS—VALIDITY—PRIOR EMINENT DOMAIN PROCEED-
INGS—NECESSITY. The failure of a city to acquire, by eminent do-
main proceedings, the right to change the grade of a street, does
not invalidate an assessment to defray the cost of making the im-
provement, and cannot be urged as a defense to an action to fore-
close the lien of the assessment.

Appeal from a judgment of the superior court for Spokane
county, Huneke, J., entered December 2, 1911, upon findings
in favor of the plaintiff, in an action to foreclose special
assessment liens. Affirmed.

*D. W. Henley*, for appellants.

*H. M. Stephens* and *Arthur L. Hooper*, for respondent.

PARKER, J.—This is an action to foreclose liens for special
assessments, levied upon abutting property to pay the cost of
improving, "by regrading, curbing and sidewalking," a por-
tion of Sixth avenue in the city of Spokane. A decree being
rendered by the trial court in favor of the city, as prayed for,
certain of the defendants have appealed. We think the record

[1]Reported in 132 Pac. 638.

warrants us in proceeding upon the theory that the controlling facts involved are not subject to controversy.

About the year 1888, the city having established the grade of Sixth avenue in front of appellants' property, graded the avenue accordingly, but evidently did not then lay sidewalks thereon. Thereafter appellants improved their property by grading their lawns with reference to the grade then established. Thereafter, in the fall of 1904, a petition was filed with the city authorities asking for the parking and sidewalking of Sixth avenue, including the portion thereof in front of appellants' property. This petition was signed by certain owners of property fronting upon the avenue, but such owners were the owners of less than "one-half of the property subject to contribute to such improvement." In this respect the petition was insufficient as an initiatory step in the making of the proposed improvement, as will appear by reference to certain charter provisions to be hereafter noticed. Thereafter, on December 27, 1904, the board of public works of the city submitted this petition to the city council, together with plans and specifications for "regrading, curbing and sidewalking" the portion of the avenue asked to be improved, and recommended that the improvement be made. At the same time, the board of public works submitted to the city council an ordinance to reestablish the grade of Sixth avenue, including the portion thereof proposed to be improved, and recommended its passage. Thereafter, on January 10, 1905, the city council passed the ordinance reestablishing the grade of Sixth avenue, the grade thus established being from six to twenty inches lower than the previously established grade. Thereafter, on February 28, 1905, the city council instructed the board of public works "to prepare new plans and specifications for the sidewalking and curbing" of the portion of Sixth avenue proposed to be improved. Thereafter, on March 28, the board of public works made its report to the city council and submitted new plans and specifications which were then approved by the city council. Thereafter, on April 5,

1905, an ordinance was passed by the city council providing for the construction of the improvement according to the plans and specifications which had been approved by the council on March 28, 1905, and also providing for the creation of a local improvement district and the levying of special assessments upon the property therein, including the property of appellants, to pay the cost of the improvement. This ordinance was passed by the unanimous vote of the city council. Thereafter the improvement was constructed, and an assessment roll made and filed in the usual manner, apportioning and charging the cost of the improvement to the several lots and parcels of land within the improvement district, and upon due notice given to the property owners as the law directs, there being no protest or objection made to any of the assessments, the same were duly confirmed by the council by ordinance passed on September 6, 1905. It is to foreclose the liens of certain unpaid assessments so made, that this action is prosecuted.

The argument of counsel for the appellants proceeds upon the theory that the city council never acquired jurisdiction to construct this improvement and pay for it by local assessments levied upon the property of appellants and others. To support this theory, two principal contentions are advanced: first, that the making of the improvement upon the local assessment plan was not initiated in the manner provided by the charter so as to give the council jurisdiction to proceed therewith; and second, that the making of the improvement upon the regrade of the avenue, claimed to be materially different from the previously established grade, without first acquiring the right by eminent domain proceedings as against appellant and other property owners to construct the improvement upon the new grade, was an omission of a prerequisite jurisdictional step to the making of the improvement and levying of the assessment.

The first of these contentions is rested upon the following provisions of the then existing charter of the city of Spokane:

"Sec. 61. . . . . No improvement, where the whole or any portion of the cost and expense thereof is to be defrayed by the collection of special assessments upon the property specially benefited thereby, shall be ordered unless the owners of at least one-half of the property subject to contribute to such improvement, shall file a petition therefor; *provided*, that the legal representatives of such owners may sign such petition for and on behalf of the owners; *provided further*, that such improvement may be ordered without petition by an ordinance which shall have passed by a vote of at least two-thirds of the whole council."

"Sec. 62. . . . Whenever, in the absence of any petition, the council shall deem it advisable to order such improvement, it shall by resolution direct the board of public works to prepare and transmit a report of such work; and said board shall thereupon prepare and file such report in the same manner as if there had been a petition therefor and favorable report by the board."

It is insisted that, because the petition for the improvement which was filed in the fall of 1904 was insufficient as an initiatory step, in view of its want of sufficient number of signatures of the owners, all subsequent proceedings looking to the making of the improvement and levying of the assessment must fall. Admitting, for argument's sake only, that a petition with a sufficient number of signatures might become a necessary jurisdictional step in the absence of the improvement being ordered by ordinance passed by at least a two-thirds vote of the whole council, it seems to us that, in view of the fact that the council did eventually order this improvement by an ordinance passed by its unanimous vote, it thereafter became immaterial that the petition filed some months previous asking for the improvement happens to be defective. We are quite unable to see how what may have been previously done by the property owners in the way of attempting to properly petition for this improvement can in any degree lessen the power of the council to order the improvement by an ordinance passed by a unanimous vote, as

they are clearly authorized to do by the provisions of § 61 of the charter above quoted.

It is also insisted that, viewed as an improvement ordered by the council without petition from the property owners, the council did not "by resolution direct the board of public works to prepare and transmit a report of such work," as provided by § 62 of the charter above quoted. Even admitting that this provision of the charter is more than merely directory in its force, we have noticed that, on February 28, 1905, before the ordering of the improvement by the ordinance passed by unanimous vote, the council instructed the board of public works to prepare new plans and specifications for the improvement, the board having previously recommended the making of the improvement. It is true that this action of the council appears in its record in the form of an informal motion made and carried, rather than in the form of a resolution. It seems, however, that in substance there is no difference between a resolution and a motion. Indeed, the terms are practically synonymous. 34 Cyc. 1667; Black's Law Dictionary, 1027. We think this action of the council previous to the final ordering of the improvement by ordinance by unanimous vote complied with the spirit of the charter provisions above quoted.

The remaining question is, did the failure of the city to acquire the right to change the grade of Sixth avenue, assuming that the change was material, by eminent domain proceedings, affect the validity of the assessment? It seems clear that the levying of the assessment to defray the costs of making the improvement was an exercise of the taxing power, which is a wholly different power from that of eminent domain. If appellants were damaged by the change of this grade, it is manifest that their rights in that regard were subject to protection in an eminent domain proceeding, or by interference in their behalf by a court of equity enjoining the change of grade, or by a suit for damages; but the fact that they may have been damaged by change of the grade, if

any such damages have been suffered by them, does not affect the city's power to levy the assessments here involved. A similar contention to that made by the appellants here was disposed of by the supreme court of California in *Hornung v. McCarthy*, 126 Cal. 17, 58 Pac. 303, where a constitutional eminent domain provision similar to our own was invoked. The court said:

" 'Looking at this defense from the most favorable standpoint, it is evident that it is untenable. The section of the constitution just quoted refers to, and is intended to regulate, the exercise of the right of eminent domain; whereas special assessments for local improvements, such as the tax bills before us, are referable to and sustainable under the taxing power. This distinction is well recognized both here and elsewhere in the United States (*Garrett v. St. Louis*, 25 Mo. 505, 69 Am. Dec. 475; Lewis on Eminent Domain, § 5). If the taxing power has been called into play in the mode required by law for the purpose of paying for a local improvement, such as paving or grading a street, it is no defense to a bill issued therefor to say, as is said here, that the street, or the improvement, damaged and did not benefit the property, though, if such were the fact, the party might have his action (on a proper showing) under the constitution for such injury. (*Householder v. Kansas*, 83 Mo. 488.) If the city had invoked the power of eminent domain unlawfully in the premises, it could be held actionable therefor, but that would not interfere with the collection of the special tax bill for an improvement regularly made under the taxing power. The right of action which a person would thus have against the municipality would constitute no just defense to the claims of the contractor who had made the improvement and to whom, under the law in question, the tax assessment is payable.' Our conclusion is, that the assessment was not void upon the grounds above noted."

No other authority has come to our notice out of harmony with this view, while the following may be cited in support of it: Lewis, Eminent Domain (3d ed.), § 5; *Duncan v. Ramish*, 142 Cal. 686, 76 Pac. 661; *Engebretsen v. Gay*, 158 Cal. 27, 109 Pac. 879; *Barfield v. Gleason*, 111 Ky. 491, 23 Ky. Law 128, 63 S. W. 964; *Louisville Steam Forge Co.*

*v. Mehler*, 112 Ky. 438, 64 S. W. 396, 652; *In re Cruger*, 84 N. Y. 619.

It might well be argued, notwithstanding we might regard the contentions made by counsel for appellants as establishing the irregularities they claim in the initiation of this improvement, that, in view of the fact that the assessment was confirmed upon due notice, without objection upon the part of any of the property owners, the validity of the assessment as against all of such defects and irregularities was finally adjudicated in favor of the city upon its confirmation by the city council. Rem. & Bal. Code, §§ 7532, 7533; *Rucker Bros. v. Everett*, 66 Wash. 366, 119 Pac. 807, 38 L. R. A. (N. S.) 582. However, in view of what has been said, we need not pursue the inquiry along these lines further.

The judgment is affirmed.

CROW, C. J., MOUNT, CHADWICK, and GOSE, JJ., concur.