STATE ex rel. WAGNER, Appellant, v. SUMMERS, City Auditor, Respondent.

(144 N. W. 730.)

1.  **Constitutional Law—Republican Form of Government—Political Question.**

    Whether the State of South Dakota is now republican in its form of government is a political question solely for the Congress, and not a judicial question, and hence the adoption of the initiative and referendum statute, as applied to municipalities, does not raise the constitutional question as to whether the state is republican in its form of government.

2.  **Constitutional Law—Legislative Power—Limitations.**

    The legislative power of the legislature is unlimited, except as it is limited by the state constitution and the federal constitution.

3.   Same—State Constitution—Limitation of Legislative Power.

   While the federal constitution is a grant of power to Con-
.gress, the state constitution is not a grant of, but a limitation
upon, the powers of the legislature.

4.   Constitutional Amendment—Initiative and Referendum—Object,
   Effect, of.

   In adopting Sec. 1, Art. 3, of the Constitution of South Da-
kota, as amended in 1898, relating to the initiative and refer-
endum, the object thereof, as well as its effect as concerns
the referendum was not to grant the power to the legislature
to authorize the referendum, since the legislature already had
that power.

5.   Constitutional    Law—Referendum—Delegation    of    Legislative
   Power—Veto Power.

   The exercise of the referendum, under a statute applying the
referendum to municipalities, is not an exercise of delegated
legislative power, but is, in effect, the exercise of the veto
power.   And, while the Legislature already had the power to.
authorize the referendum, the people had no method of com-
pelling the Legislature to exercise that power without amend-
ing the constitution by adopting the referendum clause.

6.   Initiative and Referendum—Municipalities—Power of Legislature
   —Validity of Statute.

   The Legislature had power, independent of Const., Art. 3,
Sec. 1, as amended in 1898, establishing the initiative and
referendum, to enact Laws 1907, Ch. 86, Sec. 39, providing that
no law, ordinance, or resolution passed by a city board of
commissioners, except for the immediate preservation of public
health, etc., shall become effective until 20 days after its
passage.

7.   Municipal Corporations—Legislative Power—Limitation—Initia-
   tive and Referendum.

   Const., Art. 3, Sec. 1, as amended in 1898, as one of the ex-
ceptions to the vesting of legislative power in the Legislature,
and as a reservation of right to the people, that the people
reserve to themselves the right to require that any laws
enacted by the Legislature shall be submitted to a vote of the
electors before becoming effective, except such laws necessary
for immediate preservation of public health, etc., and that
such section shall apply to municipalities.   Held, that the
amendment did not limit the power of the legislature to
authorize the referendum in municipalities solely with respect
to laws, or matters having the effect of law; the only limita-
tion being that expressly contained in the amendment regarding
laws necessary for preservation of public health, etc.

8. **Constitutional Law—Division of Powers—"Judicial Legislation"—Referendum—Abuse of Power of.**

Whether the power of referendum may be abused, or unwisely exercised, to the embarassment or injury of individuals or the public, is not for the courts to decide. Where the legislature has declared no limitations, the courts are without power to write them in the law; and courts should decline attempting, by construction, to add to defective legislation, or to eliminate or limit provisions which work public or private injury, and should interpret the law as it is written in the statute.

9. **Municipal Corporations—Municipal Legislation—"Resolution"—"Motion"—"Law, Ordinance, or Resolution,"**

Pol. Code, Sec. 1214, relating to initiative and referendum in cities generally, provides that "no law, ordinance, or resolution having the effect of law for the government of any city or town * * * shall go into effect until twenty days after" its passage, etc., and Laws 1907, Ch. 86, Sec. 39, relating to cities under commission form of government, provides that no law, ordinance, or resolution shall go into effect until 20 days after its passage and publication, if the same be one which by law must be published, or, if not required to be published, until 20 days after its passage, and defines the words "law, ordinance, or resolution" to mean ordinances, resolves, orders, agreements, contracts, and franchises, and any measure within the power of such city to enact. The Board of Comissioners of Yankton City "moved" that an application for permit to sell intoxicants be granted, and that city auditor be instructed to issue the permit, and the motion was carried. *Held*, that the liquor permit was granted by "resolution" within Sec. 39, and that a referendum thereunder could be required; the word "resolution" being defined as the determination or decision in regard to the opinion or intention of a deliberative or legislative body, public assembly, town council, etc.; also a motion or formal proposition offered for adoption by such body, and a "motion" being defined as a proposal or suggestion looking to action or progress, especially a formal proposition made in a deliberative assembly.

(Opinion filed December 30, 1913. Rehearing pending.)

Appeal from Circuit Court, Yankton County. Hon. ROBER.' B. TRIPP, Judge.

Mandamus by the State, on the relation of V. J. Wagner, against John W. Summers, as City Auditor of the City of Yankton. From a judgment of dismissal, relator appeals. Reversed and remanded, with directions to issue peremptory writ.

*Joseph Janousek,* and *Charles P. Bates,* for Appellant.

The right to require the submission of this question to the electors of the city is established and guaranteed by the express provisions of Section 39, et seq., of Chapter 86, Laws of 1907. Section 1, article 3, State Constitution, as amended in 1898. Laws 1899 ch. 93 (Pol. Code Secs. 21-27), Secs. 1214, to 1228, Pol. Code, Laws 1907, ch. 86, secs. 39-52.

Section 39 was designed to and does extend the right to invoke the referendum as to all ordinances, resolves, orders, agreements, contracts, franchises and any measure which it is in the power of the Board of City Commissioners to enact or put into force and effect, except such as are for the immediate preservation of public peace, health, safety, etc., and the words "having the effect of law" cannot be read into this section.

In section 39 the lawmakers have omitted the words "having the effect of law, for the government of any city or town." This express omission can have but one meaning, and that is that the Legislature intended to modify the purpose and effect of the statute by such omission.

Prior to the adoption of the constitutional amendment, the Legislature had full power to prescribe any form of government for municipalities that it deemed advisable, subject to the provisions of section 1 of Article 10 of the Constitution, and unless restricted by the provisions of the last mentioned section, could pass an act providing for the submission of any question, whether legislative or administrative, to the electors of such municipality. This amendment did not confer any additional power upon the legislature, but expressly reserved to the electors the right to vote upon certain laws passed by the state Legislature, and made the section apply to municipalities. The only limitation imposed upon the Legislature relative to its power to enact laws for the submission to the electors of a municipality of any question relating to the government or control of municipal affairs in any respect, is that after the adoption of the amendment the Legislature could pass no act *that would prevent the submission of municipal laws or legislative acts of city councils or boards of commissioners to a vote of the electors of a municipality.*

The right to require submission of this question to the electors of the city is established and guaranteed by Section 39, et

seq, of Chapter 86, Laws of 1907, which is valid. Cooley on Constitutional Limitations, 7th ed. pp. 126-128 and 241-242. Story Const. Sec. 405a, 424. 8 Am & Eng. Ency. of Law, 678. Sutherland on Statutory Construction 2nd ed. Sec. 5. Black's Constitutional Law, Secs. 39, 41-43, 8 Cyc. 741, 806. In re Wat-son, 17 S. D. 486. State v. Anderson, 118 N. W. 22, (N. D.) State v. Mankato, 41 L. R. A. N. S. (Minn.) and note. Walker v. City of Spokane, 113 Pac. 775, (Wash.) State v. Cochran, 105 Pac. 884 (Ore.) State v. Cunningham, 103 Pac. 498 (Mont.) City Imp. Co. v. Regents of University, 96 Pac. 801 (Cal.) People v. Flagg, 46 N. Y. 401. Hawthorne v. People, 109 Ill. 302.

We look in the Constitution of the United States for *grants* of legislative power, but in the constitution of the State to ascertain if any *limitations* have been imposed upon the complete power with which the legislative department of the State was vested in its creation. Sutherland on Statutory Construction, 2nd ed., sec. 5. In re Watson, 17 S. D. 486, The legislature has full power to provide for the government of cities and may, if it sees fit, delegate all powers, both legislative and administrative, to the electors of the municipality, and grant them the right to vote directly upon all municipal affairs. Eckerson v. City of Des Moines, 115 N. W. 177. In re Pfahler, 150 Cal. 71. Ex parte Wagner, 21 Okla. 33; 18 Am. & Eng. Anno. Cases 197. State v. Ure 135 N. W. 224. (Neb.) State ex rel v. Mankato, 136 N. W. 264. State v. Corbett, 57 Minn. 349. Walker v. City of Spokane, 113 Pac. 775. Brown v. City of Galveston, 75 S. W. 488.

The granting of saloon licenses amounts to and is, in effect, a legislative act.

The word "permit" may mean that some man, or body of men, for certain political reasons, have been invested with the special power, authority or privilege of doing something which, without such special authorization, would be unlawful and could not legally be done by anyone; or, it may mean that the proper authorities have found and determined, by examination or otherwise, that some particular person has shown himself qualified to engage in some occupation, lawful in itself, but which requires special skill, ability, or training.

If it has granted this right or privilege through the exer-

cise of its legislative discretion, and upon considerations of public policy affecting the welfare of the city, it is a legislative act.

*A. L. Wyman,* and *French & Orvis,* for Respondent.

Under Art. 3, Sec. 1, Constitution, as amended, it is clear that *laws* only, enacted by the Legislature can be submitted to a vote of the electors of the state before going into effect, and such actions of city councils or city commissions as are *legislative* in character.

Neither Secs. 21 to 27 inclusive, Pol. Code, nor Secs. 1214 to 1228, inclusive, attempt to authorize or permit any measure to be referred to the electors except such as are legislative in character, or have the effect of law.

Section 39, Ch. 86, Laws 1907, leaves out the phrase "having the effect of law."

Section 39, Chapter 86, Laws 1907, was not intended to give to Boards of City Commissioners, powers not possessed by city councils; nor was it intended to give to the electors of a city under the commission form of government, powers not possessed by the electors in cities governed under the existing law applicable to cities. The right to initiate legislative action, and the right to have referred to the electors any acts of a city commission were intended thereby to be the same as in the case of city councils under existing laws relating to cities not under the commission form of government.

Dillon on Municipal Corporations, Volume II, Chapter 899, 5th Ed. Jones v. Schuylkill Light, H. and P. Co. 202 Pa. 164 (51 At. 762) Section 48 of Chapter 86, Laws of 1907. Brazell v. Zeigler, county clerk, (Okla,) 110 Pac. 1052.

No power is conferred by Art. 3, Sec. 1, of the Constitution as amended in 1898, upon the electors of a city to initiate or refer measures or laws, but that power is reserved by the constitution itself in the electors of the city. The Legislature is not authorized by the state Constitution to delegate such powers to the electors of a municipal corporation. It is not authorized to determine whether or not the power to initiate measures or refer laws to the electors of a city shall be conferred by act of the Legislature.

The Legislature in enacting sections 1214 to 1228 inclusive, Revised Pol. Code, made no attempt to confer upon the electors

of such cities any powers not reserved by the electors to themselves by virtue of the constitutional provision referred to, but when the Legislature enacted Section 39, Chapter 86, Laws 1907, relating to cities under commission, if that section shall be construed as appellant's counsel contend for, it attempted to confer upon or delegate to the electors of cities under commission certain powers not reserved in such electors by virtue of the Constitution, and not possessed by the Legislature.

If the Legislature has ever possessed or now possesses any such powers, such power existed prior to the amendment of section 1, article 3, state Constitution in 1898.

By the constitution reserving the rights of referendum of acts having the effect of law, the right to have referred acts of any other character is impliedly denied. Ex parte Farnsworth, (Tex.) 135 S. W. 535. Nothing but "laws" can be submitted to a vote of the electors of the state. Laws 1907, p. 106.

The measure must also be something that cannot go into effect "until twenty days after its passage." It will not be contended the adoption of that motion was within the statutory exception.

GATES, J. The city of Yankton is a city under the commission form of government, viz., under chapter 86, Laws 1907, and the acts amendatory thereof. On June 2, 1913, the board of commissioners of said city, granted to a certain individual a permit to sell intoxicating liquors at retail in said city. On June 4, 1913, there was presented to defendant as city auditor, a petition signed by relator and others, in number more than 5 per cent. of the legal voters of said city, requesting said defendant to submit the motion or resolution by which said permit was granted to the vote of the electors of said city for rejection or approval. The defendant neglected and refused to call an election therefor. Upon the affidavit of the relator setting forth the facts, the trial court, on June 23, 1913, issued an alternative writ of mandamus requiring the defendant to call such election, or to show cause to the contrary. Upon the hearing the defendant moved to quash the writ on the ground that the same did not show or recite facts sufficient upon which to issue a writ of mandamus. The trial court granted said motion, and entered judgment dismissing the proceeding. From such judgment relator appeals.

Appellant contends that the defendant, being a ministerial officer, cannot be heard to question the constitutionality of the statute under which this proceeding is brought. In view of the decision at which we have arrived, it becomes unnecessary to determine that question. It is, however, one that is certainly not frivolous.

The only other question presented for our consideration is whether the act of granting such permit can lawfully be referred to the electors for their rejection or approval.

Section 1 of Article 3 of the state Constitution as adopted in 1889 provided: "The legislative power shall be vested in a legislature which shall consist of a senate and house of representatives." At the general election in 1898 the electors of this state adopted an amendment to said section covering the features popularly known as the initiative and referendum. South Dakota was the first state in the Union to adopt them. Said section, as then amended and as now in force, reads as follows: "The legislative power of the state shall be vested in a Legislature which shall consist of a senate and house of representatives, except that the people expressly reserve to themselves the right to propose measures, which measures the Legislature shall enact and submit to a vote of the electors of the state, and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect (except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions), Provided, that not more than five per centum of the qualified electors of the state shall be required to invoke either the initiative or the referendum. This section shall not be construed so as to deprive the Legislature or any member thereof of the right to propose any measure. The veto power of the executive shall not be exercised as to measures referred to a vote of the people. This section shall apply to municipalities. The enacting clause of all laws approved by vote of the electors of the state shall be: 'Be it enacted by the people of South Dakota.' The Legislature shall make suitable provisions for carrying into effect the provisions of this section." A slight difference in wording and punctuation is noticed between the amendment as adopted and as appears in the

session laws of 1903 and subsequent years. We have quoted the former.

At its next session after the adoption of said amendment, viz, the session of 1899, the Legislature enacted chapter 93 (sections 21-27, Pol. Code), which related directly to measures enacted or to be "enacted and submitted" by the Legislature; and chapter 94 (sections 1214-1228, Pol. Code), which related to municipalities. In 1907 the Legislature enacted chapter 86, providing for the incorporation of "Cities under Commission." Sections 39-53 of said chapter relate to the initiative and referendum. Section 39 of said act is as follows: "Sec. 39. Laws, Ordinances Take effect—When. No Law, ordinance or resolution, passed by the board of commissioners thereof, (except such are for the immediate preservation of the public peace, health, or safety, support of the city government and its existing public institutions), shall go into effect until twenty days after the passage and publication of such law, ordinance or resolution, if the same be one which by law must be published, and until twenty days after its passage if it be one which is not by law required to be published, and the words law, ordinance or resolution used in this article mean ordinances, resolves, orders, agreements, contracts, franchises and any measure which it is in the power of the board of commissioners of said city to enact." This section differs from section 1214, Pol. Code, in that the latter section provides: "No law, ordinance, or resolution, *having the effect of law*, for the government of any city or town * * * shall go into effect," etc. It will be noticed that the italicised words "having the effect of law" are not contained in the referendum feature of the law governing cities under commission.

[1] It is contended by respondent that the initiative and referendum are repugnant to a republican form of government, and hence that they violate section 4 of article 4 of the Constitution of the United States. While the initiative and referendum as applied to the Legislature may raise the question as to whether this state is now republican in its form of government, such question is not a judicial question for the courts to determine, but is a political question solely for the Congress to determine. Pac. States Telephone & Telegraph Co. v. State of Oregon, 223 U. S. 118, 32 Sup. Ct. 224, 56 L. Ed. 377. It has been decided in other

jurisdictions, and we agree therewith, that the provisions of the initiative and referendum as applied to municipalities do not raise the question as to whether a state is republican in its form of government. Eckerson v. City of Des Moines, 137 Iowa, 452, 115 N. W. 177; In re Pfahler, 150 Cal. 71, 88 Pac. 270, 11 L. R. A. (N. S.) 1092, 11 Ann. Cas. 911; Walker v. City of Spokane, 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912C, 994; Kiernan v. City of Portland, 57 Or. 454, 111 Pac. 379, 112 Pac. 402, 37 L. R. A. (N. S.) 339.

It is not contended by respondent that the granting of a permit to operate a saloon comes under the parenthetical clause of section 39, c. 86, Laws 1907, viz. "(except such as are for the immediate preservation of the public peace, health, or safety, support of the city government, and its existing public institutions) ;" but it is contended by respondent that the granting of such permit is not a law and does not have the effect of law, and that in so far as said section 39 is broader than the constitutional reservation, it is null and void. If the legislature had the authority to enact said section 39, it becomes immaterial whether the action of the city commission sought to be referred is a law or has the effect of law. The solution of the question at issue then depends: First, upon the authority of the Legislature (either under the initiative and referendum amendment to the Constitution or independently thereof) to enact said section 39; and, second, upon whether the granting of such permit comes within the provisions of said section 39.

[2] It is elementary that the legislative power of the Legislature is unlimited except as it is limited by the state Constitution and federal Constitution.

[3] It is also elementary that while the federal Constitution is viewed as a grant of power to Congress, the state Constitution is not a grant of power, but is a limitation upon the powers of the Legislature. In the case of In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321, this court said: "It should be constantly borne in mind that there are no limitations upon the legislative powers of the Legislature in this state, except such as are imposed by the state and federal Constitutions; that no legislative act should be declared unconstitutional unless the conflict be-

tween its provisions and some principle of constitutional law is so plain and palpable as to leave no reasonable doubt of its validity."

Judge Cooley in his work on Constitutional Limitations (7th Ed.) pp. 126-128, says: "In creating a legislative department and conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United States. The legislative department is not made a special agency for the exercise of specifically defined legislative powers, but is intrusted with the general authority to make laws at discretion." Many other and similar citations might be given, but we will only call attention to two, viz., State ex rel. Schrader v. Polley, 26 S. D. 5, 127 N. W. 848, and State ex rel. Simpson v. City of Mankato, 117 Minn. 458, 136 N. W. 264, 41 L. R. A. (N. S.) 111.

[4] The object of the constitutional amendment, as well as its effect (so far as concerns the referendum) was not to grant the power to the Legislature to authorize the referendum. The Legislature already had that power. Whether, in view of the previous lodging of the legislative power in the Legislature, it was necessary for a constitutional amendment in order to authorize the initiative, and whether in that respect there is any difference between the initiative as applied to the Legislature and as applied to municipalities, are questions which we are not called upon to discuss or decide. They involve the principle of the delegation of legislative power, with which we are not concerned in this case.

[5] The exercise of the referendum is not an exercise of delegated legislative power; it is in effect the exercise of the veto power. While the Legislature already had the power to authorize the referendum, the people had no method of compelling the Legislature to exercise that power without amending the Constitution. To obviate this difficulty the referendum clause of the Constitution was adopted.

[6] Can it be doubted that prior to the adoption of that amendment the Legislature might have enacted a law providing

that no permit to operate a saloon should be effective until it had been ratified by the electors of the city? This question must be answered in the negative unless there is something in the Constitution that limits the authority of the Legislature. We have studied the various provisions of the state Constitution carefully and minutely, and are unable to find a single restriction of that nature upon the legislative authority. Let us consider an instance in which the Legislature, prior to the constitutional amendment of 1898, made provision for the submission of questions to the vote of the electors of a city. By subsection 5 of section 1 of article 5 of chapter 37, Laws 1890, it was provided that city bonds could not be issued unless authorized by a vote of the legal voters. There was then no constitutional provision requiring such vote. Can it be claimed that such provision was unauthorized? Again by section 15, art. 16, c. 37, Laws 1890, the majority of the owners of property liable to be assessed for local improvements could stop work by protest filed. Was this provision an unlawful exercise of the power of the Legislature? We think not. We can in fact find nothing in the Constitution that would prohibit the Legislature from providing for the government of cities by "town meeting," as in the case of civil townships, if the legislature in its wisdom so decided. We conclude, therefore, that the Legislature did have the power, independently of the constitutional amendment of 1898, to enact said section 39 of chapter 86 of the Laws of 1907.

[7-8] It is also entirely clear that such amendment did not by implication limit or restrict the power of the Legislature, to authorize the referendum in municipalities, solely to laws or matters having the effect of law. The only limitation imposed by this amendment upon the Legislature relative to its power to enact laws for the submission to the electors of a municipality of any question relating to the government or control of municipal affairs in any respect is that after the adoption of the amendment the Legislature could pass no act that would prevent the submission of municipal laws or municipal measures having the effect of law to a vote of the electors of a municipality, except such as may be necessary for the immediate preservation of the public peace, health, or safety, or for the support of the city government and its existing public institutions. But respondent earnestly contends that

there must be some limit to character of the acts which may be referred to the electors of the city for their rejection or approval. If we are right in our conclusion that the only limitation of that kind upon the Legislature was to prevent it from authorizing the submission of measures that may be necessary for the immediate preservation of the public peace, health, safety, etc., it seems clear that the Legislature in its wisdom must be left to prescribe what acts (not within the exception) may be referred, and that courts are without authority to declare limitations where none are prescribed by the Legislature. If other limitations are deemed wise or salutary, the Legislature alone can so declare. Whether the power of referendum may be abused or unwisely exercised, to the embarrassment or injury of individuals or the public, is not left to the courts to determine. They can only declare the law as it is written in the statute. Where the Legislature has declared no limitations the courts are without power to write them in the law. We might concede all the ills foreseen by respondent's able counsel, but yet the courts cannot remedy them. The Legislature alone can prescribe limitations. In some instances, no doubt, courts, in laudable attempts to avoid the ills resulting from defective or ill considered legislation have almost, if not quite, transcended the limitations upon judicial power, and the charge of "judicial legislation" has come up from those who have sought to benefit through such laws, and it has become popular to denounce "court made laws." In our judgment the time has come when courts should decline the task of attempting, by construction, to add to defective legislation, or to eliminate or limit provisions which work public or private injury. They should interpret the law as it is written, and not otherwise.

[9]   We come now to the question as to whether the granting of such permit comes within the provisions of said section 39. While under the general law as defined in section 1214, Pol. Code, in order to authorize the referendum, ordinances, resolves, orders, agreements, contracts, etc., must probably be such as have the effect of law, there is no such restriction in said section 39 governing cities under commission. By said section all laws, ordinances, and resolutions are subject to the referendum, except those that are for the immediate preservation of the public peace, health, or safety, or for the support of the city government and its ex-

isting public institutions. It being conceded, as it must be, that the granting of such permit is not an act coming within said exception, the question is whether the action of the board of commissioners in granting such permit was in effect a law, ordinance, or resolution. If it was either of these, then it was subject to the referendum. As we have seen, it is unnecessary to determine whether or not it was a law. It was clearly not an ordinance. Was it then a resolution? We are of the opinion that it was.

Paragraph 5 of the alternative writ reads as follows: "5. That on June 2, 1913, the Board of Commissioners of said city of Yankton, passed and adopted a motion or resolution granting the application of William Poppe for a permit to sell intoxicating liquors at retail in the city of Yankton, and instructing the said city auditor to issue the said permit in pursuance to said motion or resolution, which motion or resolution was as follows:

'Moved by Commissioner Danforth that the application of Wiliam Poppe for a permit to sell intoxicating liquors at retail in the city of Yankton be granted, and the city auditor be instructed to issue permit. " While couched in the language of a motion, it was in effect a determination of that body. Webster's New International Dictionary defines the word "resolution" as follows: "A formal expression of the opinion or will of an official body or a public assembly adopted by vote." Said word is defined in Black's Law Dictionary, p. 127, as follows: "The determination or decision, in regard to its opinion or intention, of a deliberative or legislative body, public assembly, town council, board of directors, or the like. Also a motion or formal proposition offered for adoption by such body." Webster's New International Dictionary also defines the word "motion" as follows: "A proposal or suggestion looking to action or progress; esp., a formal proposal made in a deliberative assembly." In the latter use, the term then would seem to be synonymous with the word "resolution." The motion as recorded embodied both the motion and the resolution. In adopting that so-called motion the board of commissioners thereby determined to grant the permit. The effect was the same as if a formal written resolution had been presented and adopted. Section 2858, Pol. Code, pronounces the action of the governing body of the city by which such permit is authorized to be a "determination." In McDowell

v. People, 204 Ill. 499, 502, 68 N. E. 379, 381, the Supreme Court of Illinois has rendered the following definition: "A resolution or order is not a law, but merely the form in which the legislative body expresses an opinion." See, also, City of Antonio v. Mickeljohn, 89 Tex. 79, 82, 33 S. W. 735; Jones v. McAlpine, 64 Ala. 511, 513; El Paso Gas, etc., v. City of El Paso, 22 Tex. Civ. App. 309, 312, 54 S. W. 798; Sawyer v. Collins, 148 Iowa, 712, 127 N. W. 1015; 7 Words and Phrases, p. 6173. In City of Spokane v. Ridpath, 132 Pac. 638, the Supreme Court of Washington said: "It is true that this action of the council appears in the record in the form of an informal motion made and carried, rather than in the form of a resolution. It seems, however, that in substance there is no difference between a resolution and a motion. Indeed, the terms are practically synonymous." In Sawyer v. Lorenzen, 149 Iowa, 87, 127 N. W. 1091, Ann. Cas. 1912C, 940, the Supreme Court of Iowa held the following to be a resolution: "Motion made and seconded that Lorenzen & Weise be granted liquor license on lots 1 and 2. Carried."

Another distinction is noticed between the provisions of the referendum law governing cities generally and those governing cities under commission. In the former case the act of the city council does not "go into effect until twenty days after the passage of such law, ordinance, or resolution." In the latter case the act of the board of commissioners does not "go into effect until twenty days after the passage and publication of such law,, ordinance, or resolution, if the same be one which by law must be published, and until twenty days after its passage if it be one which is not by law required to be published." This definite inclusion of the less formal acts—i. e., those that are not required by law to be published—would seem to plainly indicate that the words "having the effect of law" were intentionally omitted from said section 39, and that it was intended by the legislature to make all resolutions of the board of commissioners subject to the referendum except those mentioned in that section.

We are further confirmed in our view as to the meaning of the word "resolution" in the above-mentioned section 39 of the law governing cities under commission, because an examination of chapter 86, Laws 1907, in its entirety reveals little or nothing to which the word "resolution" may be applicable, unless it be in-

terpreted in accordance with the above decision and citations. The granting of such permit being subject to the referendum, it follows that the court erred in dismissing the proceeding.

The judgment of the trial court is reversed and the cause remanded, with directions to issue the peremptory writ of mandamus prayed for.