On the Merits.
 

 OVERTON, J.
 

 This suit is an attack upon the constitutionality of Acts No. 100 and No. 143 of 1928, in so far as these acts relate to, or appropriate money for, the purchase of school books for the use of the school children of this state. The relief asked for is that these acts be declared unconstitutional and that the Louisiana state board of education, the auditor of public accounts, the state treasurer, and the state superintendent of public education be enjoined from using the money appropriated by the acts for the purchase of school books.
 

 The plaintiffs are citizens and taxpayers of this state, and prosecute this suit as such. Act No. 100 of 1928, which is one of the acts attacked by them, omitting its title, reads as follows:
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That the Severance Tax Fund of the State, as levied by Act 140 of 1922, as amended, shall be devoted after allowing funds and appropriations as provided by the Constitution of the State, first, to supplying school books to the school children of the State of Louisiana, and that thereafter such further sums as remain in the said Severance Tax Fund shall be transferred to the State public school funds.
 

 “See. 2. That the State Board of Education of Louisiana shall provide the said school books for school children free of cost to such children out of said tax fund, and thereafter apply the remaining sums out of the said Sev
 
 *1014
 
 ■erance Tax Fund to the State public school funds.
 

 “Sec. 3. That this act shall not apply to persons attending colleges and universities.”
 

 Act No. 143 of 1928, the last of the two acts attacked, is the General Appropriation Act. After making various appropriations for the fiscal years 1928-29 and 1929-30, out of the general revenues of the state, and after making certain appropriations out of the severance tax fund, the act (see page 188 of the Acts of 1928) appropriates out of that fund $750,000 for each of those years, the appropriations to be used for the following purpose, to wit;
 

 “Por purchase of free school books for the use of school children of this State, to be expended by the State Board of Education of Louisiana as provided by House Bill No. 90 of 1928 [Act 100 of 1928], or so much thereof as may be necessary.”
 

 After making the appropriations for school ■ -books, the act then provides that the balance of the severance tax fund shall be transferred to the current school fund as provided by House Bill No. 90 of 1928, which is Act No. 100 of 1928, quoted above.
 

 The title of the act making the foregoing appropriations is: “An act making an appropriation to defray the ordinary expenses of the Government; to pay the interest on the public debt; and to support public schools and public charities in the State of Louisiana ; to build and repair public levees; to maintain the State Penitentiary; and other State departments for the year commencing July 1, 1928, and ending June 30th, 1929, and for the year commencing July 1st, 1929, and ending June 30th, 1930.”
 

 The constitutionality of the two acts under consideration is attacked on various grounds, so far as the acts relate to, or provide for, the purchase and distribution of school books. The pleas of uneonstitutionality are leveled in the pleadings against each act separately, with the result that some grounds of attack .that might have been leveled specifically against both acts are leveled only against Act No. 100. Plaintiffs, in their brief, however, have considered that, where the pleas are applicable to both acts, they were intended to apply to both, and have so treated them. Defendants have apparently acquiesced in this. In view of this acquiescene, and in view of the fact that the two acts are very closely related, we shall consider that, where a plea is applicable to both acts, and is so discussed in the briefs, it was so intended to apply, and shall state the case accordingly.
 

 Plaintiffs urge that Act No. 100, in so far as it relates to the purchase of school books, contravenes sections 1' and 10 of article 4 of the Constitution of 1921, in that it attempts to draw money from the public treasury without a specific appropriation therefor, and also contravenes section 1 of that article, in that it attempts to draw money from the public treasury for a longer term than two years.
 

 Plaintiffs also urge that Act No. 143 of 1928, so far as relates to the appropriation of money for school books, contravenes section 16 of article 3 of the Constitution, in that the title of the act has nothing in it indicating the intention to make appropriations for the purchase of such books, and that the act also contravenes section 9 of article 4 of the Constitution, in that the appropriations for the purchase of school books are for a purpose other than any of those which by said section may be embraced in the general appropriation bill.
 

 Plaintiffs also urge that both of the foregoing acts, so far as they relate to the purchase and distribution of school books, con
 
 *1016
 
 travene section 8' of article 4 and section 4 of article 1 of the Constitution, in that they authorize and provide for the expenditure and distribution of public funds for private, charitable, or .benevolent purposes to private persons and institutions, and in that they authorize the taking of money from the public treasury for the purpose of teaching religion and are in aid of churches, sects, or denominations of religion; that they violate section 12 of article 4 of the Constitution, in that they lend or grant to private persons, associations, corporations, and institutions funds, credit, property, or things of value, belonging to the state; that they violate section 13 of article 12 of the Constitution, in that they attempt to use public funds for the support of private and sectarian schools; and that they violate section 14 of article 12 of the Constitution, relating to the distribution of public school funds.
 

 Based upon the foregoing allegations of unconstitutionality, plaintiffs close their attack upon the acts by alleging that the expenditure of the severance tax for such illegal purposes is the taking of their property for private purposes, without due process of law, in contravention of section 2 of article 1 of the Constitution of this state, and of the Fourteenth Amendment of the Constitution of the United States, and is an act contrary to the republican form of government, guaranteed to each state by section 4 of article 4 of the Constitution of the United States.
 

 Defendants urge that plaintiffs fail to disclose a right of action. This contention rests upon the ground that a citizen and taxpayer has no standing as such to contest the expenditure of the funds of the state under an alleged unconstitutional statute, and that, even if it were otherwise, plaintiffs do not disclose wherein they would suffer irreparable injury by the expenditure of the money appropriated for the purchase of school books. The members of the court are divided on this question. Four members thereof,, namely, the Chief Justice, and Justices LAND, ROGERS, and THOMPSON are of the opinion that plaintiffs, as taxpayers, have a right of action to contest the expenditure of public funds, belonging to the state, under an alleged unconstitutional statute. The members of the court, so thinking, are of the opinion that the case of Donaldson v. Police Jury, on rehearing, 161 La. 480, 109 So. 38, and the decisions there cited, are controlling in this case. On the other hand, Justices ST. PAUL and BRUNOT, and the writer of this opinion think that plaintiffs, as taxpayers, have no right to prosecute this suit, or, in other words, that they have no right of action. In their view Donaldson v. Police Jury is not pertinent here, since it did not involve the funds of the state. In their opinion the question should be decided according to. the principles laid down in the case of Sutton v. Buie, 136 La. 234, 66 So. 956, L. R. A. 1915D, 178, and Massachusetts v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078. However, the four members of the court, who think that a right of action is disclosed, are of the opinion that Massachusetts v. Mellon is not appropriate here, as it has reference to a taxpayer of the United States, and that the case of Sutton v. Buie, so far as it maintains that a taxpayer has no right of- action in a case like this, is contrary to the great weight of authority and should not be followed. Many of the eases relied on by these members of the court, as showing the weight of authority, may be found in the annotations to Sutton v. Buie, L. R. A. 1915D, 178. From the foregoing, it is obvious that a majority of the court are of the opinion that plaintiffs disclose a right of action. Therefore, the plea
 
 *1018
 
 that plaintiffs disclose no right of action is overruled.
 

 The overruling of this plea makes it necessary to consider the pleas of unconstitutionality directed against the two statutes by plaintiffs. The contention that Act No. 100 of 192S violates sections 1 and 10 of article 4 of the Constitution, relative to the manner of making appropriations and fixing a limit upon the time for which appropriations may be made, is not well founded, for the simple reason that Act No. 100 is not, and does not purport to he, an appropriation act. It does not authorize the drawing.of anything from the treasury. It merely dedicates a part of the severance tax fund, without even specifying the amount, to the purchase of school books. Standing alone the act could have no practical effect, save as a basis for specific appropriations. That such an act is not an appropriation act, but merely an act of dedication, see Fisher v. Steele, Auditor, 39 La. Ann. 447, 1 So. 882; Board of Administrators v. Richhart, 139 La. 446, 71 So. 735; Lionel’s Cigar Store v. McFarland, Supervisor, 162 La. 956, 111 So. 341. Since the act is not an appropriation act, it was unnecessary that the Legislature, in passing it, comply with the constitutional provisions relative. tó the making of appropriations, by making them for specific purposes and specific amounts and for a period not exceeding two years.
 

 The contention that Act No. 143 of 1928 contravenes section 16 of article 3 of the Constitution, because the title of the act fails to indicate the intention of making the appropriations for the purchase of school books, presents the next question for consideration. We have quoted the title of the act in stating the case. In considering the question presented, it should be borne in mind that we are passing upon the sufficiency of the title of the General Appropriation Act, and that every reasonable presumption, supporting the sufficiency of the title, is peculiarly entitled to application, and this, though the sustaining of the plea, in the present instance, would result in declaring null only the appropriations for the purchase of school books. The title of the act is similar to the titles usually used in General Appropriation Acts in this state, and in fact follows the constitutional requirements as to what may be contained in such acts. We think that the title suffices to cause one to anticipate that, upon investigation, some such appropriations may be found in the body of the act. We therefore conclude that the title is sufficient.
 

 The next question to be considered is whether the appropriations for the purchase of school books are such appropriations as may be included in the General Appropriation Act. Section 9 of article 4 of the Constitution reads that: “The General Ap-, propriation Bill shall embrace nothing but appropriations for the ordinary expenses of the government, pensions, the public debt and interest thereon, public schools, public roads, public charities and all state institutions ; and such bill shall be so itemized as to show for what account each and every appropriation shall be made. All other appropriations shall be made by separate • bills, each embracing but one object.” The purpose of this provision is to prevent the incumbering of the general appropriation bill with all kinds of appropriations, thus simplifying it, and thereby reducing the chances of making ill-considered appropriations in the confusion that might otherwise arise, and preventing the retarding of the bill by protracted discussions over matters that more properly should be separately considered.
 
 *1020
 
 While the provision possesses substantial reasons for its existence, yet consideration should be given the judgment of the Legislature as to what may properly come within it. The Legislature evidently considered that the appropriations for the purchase of school books were sufficiently connected with the ordinary expenses of government to justify their inclusion in the General'Appropriation Act. The purpose had in view, in making the appropriations — that of reducing, and if possible of obliterating, illiteracy in this state— was a purpose in which the state was vitally interested, and the necessity for the continuance of the appropriations to accomplish that end was such as to give reasonable grounds to consider the matter an ordinary obligation and expense of government. We are not prepared to say that the Legislature erred in so treating the matter.
 

 We may consider together the objections urged against both acts to the effect that they violate section 8 of article 4, section 4 of article 1, section 13 of article 12, and section 12 of article 4 of the Constitution.
 

 Section 8 of article 4 prohibits, among other things, the taking of money from the public treasury, directly or indirectly, in aid of any church, sect, or denomination of religion, or in aid of any priest, preacher, minister, or teacher of religion as such, or for private, charitable, or benevolent purposes to any person or community, excepting certain institutions conducted under state authority. Section 4 of article 1 relates to the right to worship God according to the dictates of one’s own conscience, and prohibits the passage of laws establishing religion, or the free exercise thereof, or the granting of preferences to, or making discriminations against, any church, sect, or religious creed. Section 13 of article 12 prohibits the using of public funds for the support of any private or sectarian school. Section 12 of article
 
 4
 
 prohibits, among other things, the lending, pledging, or granting the funds, credit, property, or things of value of the state or of any political corporation thereof to or for any person or persons, association, or corporation, public or private.
 

 In our opinion, which is the view of the majority of the court, these acts violate' none of the foregoing constitutional provisions. One may scan the acts in vain to ascertain where any money is appropriated for the purchase of school books for the use of any church, private, sectarian, or even public school. The appropriations were made for the specific purpose of purchasing schoolbooks for the use of the school children of the state, free of cost to them. It was for their benefit and the resulting benefit to the state that the appropriations were made. True, these children attend some school, public or private, the latter, sectarian or nonsectarian, and that the books are to be furnished them for their use, free of cost, whichever they attend. ’ The schools, however, are not the beneficiaries of these appropriations. They obtain nothing from them, nor are they relieved of a single obligation, because of them. The school children and the state alone are the beneficiaries. It is also true that the sectarian schools, which some of the children attend, instruct their pupils in religion, and books are used for that purpose, but one may search diligently the acts, though without result, in an effort to find anything to the effect that it is the purpose of the state to furnish religious books for the use of such children. In fact, in view of the prohibitions in the Constitution against the state’s doing anything of that description, it would be legally impossible to interpret the statute as calling for any such action on the part of the state, for where a statute is susceptible of
 
 *1022
 
 two constructions, one of which makes it unconstitutional and the other constitutional, the interpretation making it constitutional must be adopted. What the statutes contemplate is that the same books that are furnished children attending public schools shall be furnished children attending private schools. This is the only practical way of interpreting and executing the statutes, and this is what the state board of education is doing. Among these books, naturally, none is to be expected, adapted to religious instruction.
 

 As relates to the contention, that the statutes violate section 12 of article 4 of the Constitution, we do not find this contention well founded. The school books are not granted or donated to the children. The donating of them would have been unnecessary to the accomplishing of the purpose of the statutes. It is only the use of the books that is granted to the children, or, in other words, the books are lent to them, which implies that they are to be returned. While it is true that there is a lending here of things of value, belonging to the state, still this lending is not the lending prohibited by the Constitution. The lending there contemplated is a lending not connected with the reasonable exercise of the police' power. Where the granting or lending of anything of value, belonging to the state, or any political corporation thereof, is necessary in the reasonable exercise of the police power, section 12 of article 4 of the Constitution was not intended to prevent the granting or lending. Were it otherwise, the state, or a municipal corporation, could not furnish, for instance, vaccine for the prevention of an epidemic. In fact, the Constitution presupposes the existence of the police power and is to be construed with reference to that fact. 12 C. J. § 415, p. 907; 6 R. C. L. § 193, p. 195. The furnishing of school books to the children of the state, for their use, in attending school, tends directly to promote the education of the children of the state and to obliterate illiteracy, thereby improving the morals of the children and promoting the general welfare and safety of the people, and hence comes within the police power. Cf. Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923. Our conclusion is that the foregoing pleas, directed against both acts, should be overruled:
 

 The next plea to be considered is that both acts contravene section 14 of article 12 of the Constitution. This section defines what the. public school funds of the state shall consist of, and provides that such funds, with the exception of poll taxes and the interest on proceeds of lands granted by the United States for the support of public schools, shall be distributed to each parish in proportion to the number of children therein between the ages of 6 and 18 years. The contention is that the parish school boards are, by this section of the Constitution, the proper distributing agencies of all school funds, excepting poll taxes and the interest on the proceeds of land, and not the state board of education. Erom this, plaintiffs draw the conclusion that the state board of education is not the proper agency under the Constitution to expend public school funds for school books. The answer to this is that the severance taxes, from which the appropriations were made, were not a part of the public school fund. They might have been made a part of it by the Legislature, but they were not. This plea should be overruled.
 

 The last question to be considered is that the act violates the due process clauses of the Constitutions of this state and of the United States, and also section 4 of article 4 of the Constitution of the United States.
 
 *1024
 
 The contention, as to the violation of the due process clauses, is based on the ground that taxes may neither be levied nor expended for any but a public purpose, and that to do either for any but such a purpose amounts to a taking of property without due process of law. It suffices to say that we do not understand that plaintiffs question the legality of the levy, but they do question the legality of the proposed expenditure. We have found, however, that the taxes, here appropriated, are to be spent legally for a public purpose, and this, we -think, disposes of the question here presented. As to the violation of section
 
 4
 
 of article
 
 4
 
 of the Constitution of the United States, it is certainly difficult, arid we think impossible, to see how the expenditure of public funds for text-books for the use of the children of the state has any tendency to destroy the republican form of government, enjoyed by this state. However, the question here presented is a political one, which-does not fall within the jurisdiction of the courts. Pacific States Telephone & Telegraph Co. v. Oregon, 223 U. S. 118, 32 S. Ct. 224, 56 L. Ed. 377; South Dakota ex rel. Wagner v. Summers, 33 S. D. 40, 144 N. W. 730, 50 L. R. A. (N. S.) 206, Ann. Cas. 1916B, 860.
 

 The trial judge refused to issue the injunction herein, and rendered judgment accordingly. His decree should be affirmed.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., dissents for the reasons given by Mr. Justice ROGERS.
 

 ROGERS, J., concurs in overruling exception of no right of action, but otherwise dissents and hands down reasons.
 

 THOMPSON, J., concurs in opinion overruling exception of no right of action, otherwise dissents, and concurs in dissenting opinion of Justice ROGERS.